19629

CITY OF MYRTLE BEACH, Appellant, v. W. M. PARKER et al., Respondents

(197 S. E. (2d) 290)

476

*Howell V. Bellamy, Jr., Esq.,* of Myrtle Beach, *for Appellant,*

*Messrs. Julius W. McKay,* Columbia, and *James P. Stevens,* Loris, and *H. E. McCaskill,* of Conway, *for Respond-*

ents,

*Howell V. Bellamy Jr., Esq.,* of Myrtle Beach, *for Appellant, in Reply.*

June 5, 1973.

BUSSEY, Justice:

In this action, commenced on November 14, 1970, the appellant city sought to have the court determine its rights in a portion of Spivey Beach Road, which traverses an area in Myrtle Beach occupied by the respondent Grand Strand Amusement Park ("Strand") leased from respondent Horry Land and Improvement Company. The respondent Business Assistance Corporation of Panama City, Florida, is assignee of Strand's lease as security for an indebtedness. Respondent Parker is president of Strand. Appellant city asserts that it has been denied access to the aforesaid portion of Spivey Beach Road by the respondents. The complaint states three causes of action, the first two of which seek a declaratory judgment to the effect that said section of road is a

public one, and for an injunction enforcing the city's rights therein. The third cause of action is predicated upon the ownership in fee of a lot abutting said road within the park area and the rights of the city in the road arising therefrom, similar relief being sought as in the other causes.

The respondents interposed a general denial and asserted the affirmative defenses of abandonment, estoppel, and a statute of limitations, 1962 Code Sec. 10-121.

The cause was referred, apparently by agreement, to the standing master of Horry County who held a reference and filed a report. Exceptions to the master's report were argued before the presiding judge who confirmed the master's findings of fact and conclusions of law with certain modifications. The city now appeals.

As we view the somewhat voluminous record, there is little conflict in the evidence as to the material, controlling facts and the issues involved are primarily, if not exclusively, questions of law. The respondent Horry Land and Improvement Company subdivided and developed a tract of land in Myrtle Beach, South Carolina, depicted on a subdivision map thereof, duly recorded in February 1937. Shown on said map is Spivey Beach Road, a street fifty feet in width, which commenced at some point to the northwest of U. S. Highway 17 and ran thence in a southeasterly direction to Yaupon Circle, and thence in an easterly direction to the intersection of two streets, now designated as Third Avenue South and South Ocean Boulevard. Between Yaupon Circle and Fourth Avenue South, Spivey Beach Road traversed Withers Swash, which runs in a generally north-south direction. The swash area was some four hundred feet in width from east to west and the road traversed such partially over a bank and partially by a wooden bridge over the run or water course.

In accordance with the said map, roads were opened and lots were sold and in particular Spivey Beach Road was opened to the public and extensive use thereof made by both

owners of the property in the subdivision and the public in general. This use continued until some undertermined time in the early to mid 1940's when the aforesaid wooden bridge partially burned and became unusable to vehicular traffic. The bridge has never been rebuilt and, in 1949, the city appropriated money to remove some of the remains thereof, such being regarded as hazardous. Since the destruction of the bridge there has been no through vehicular traffic upon Spivey Beach Road between Fourth Avenue South and Yaupon Circle, but there is evidence that there was continued use by the public of the road, in that immediate area, as a means of ingress to Withers Swash, for the purpose of fishing, bathing, etc., from both Fourth Avenue South and Yaupon Circle. The road was patrolled by the police from both ends to the bridge site.

In July 1947 the city purchased from respondent Horry Land and Improvement Company a small lot abutting the south side of Spivey Beach Road east of the swash. Upon this lot it located a sewer pumping station and from that point eastward sewer lines were located in Spivey Beach Road. About 1950 some portion of the eastern end of Spivey Beach Road was paved to facilitate access to the sewer pumping station, but just how far such pavement extended into the area now in dispute is not at all clear. In 1956 the city extended its sewer line westward in the right of way of Spivey Beach Road across the swash area, and to the west of the swash erected in the southern portion of the right of way another sewer pumping station. This latter pumping station was connected with a newly installed section of the city sewer system west of the swash and served the entire southern section of the City of Myrtle Beach.

There is evidence to the effect that some portion of Spivey Beach Road was paved some distance east of Yaupon Circle to facilitate access to the westernmost pumping station. It is undisputed that the section of Spivey Beach Road now in controversy was used throughout its entire length by the city since 1956 in connection with the maintenance of the

two pumping stations and the sewer line itself which was laid in the right of way.

Shortly prior to January 1965, the respondent Parker engaged a realtor, one Paul Dorman, to petition City Council of Myrtle Beach, in his behalf, for the rezoning of a 9.4 acre tract of land so as to permit the construction of an amusement park thereon. This tract of land lay in the swash area both to the north and south of Spivey Beach Road. Attached to the petition of Dorman was a plat made on November 5, 1957 by one Robert L. Bellamy for the respondent Horry Land and Improvement Company. Such plat showed Spivey Beach Road "stubbed off" near both the eastern and western edges of the swash area as if no street or right of way existed across the same. It appears that the area which Parker desired to lease was in part zoned R-2 and in part B-2, both of which he desired rezoned to B-1. The portion zoned R-2 lay to the north of Spivey Beach Road and it, together with the portion of Spivey Beach Road not shown on the map, as well as certain lots shown thereon, was colored orange by Dorman. The portion of the property zoned B-2 and lying to the south of Spivey Beach Road was colored green, again by Dorman. It is thus obvious that the different colors were used solely to indicate the then existing zoning classifications. At its meeting on January 5, 1965, City Council approved the zoning change requested by Dorman for Parker with the exception of the southwestern portion of the area as to which council voted to readvertise the same for a later public hearing. A description of this southwestern portion, inferentially prepared by Dorman, is set forth in the minutes of City Council and in this description one boundary is given as "Spivey Beach Road (seemingly abandoned)". Whether said tract touched the section of Spivey Beach Road here in dispute simply does not appear.

Thereafter, the respondent Strand constructed an amusement park in the leased area and commenced operation about June 1966. Several more or less permanent encroach-

ments were erected upon the right of way of Spivey Beach Road where it traversed the leased swash area. As a result of the encroachments upon the right of way, the attorney for the city, on December 2, 1966, wrote to Mr. Parker calling his attention to a recent plat made by the City Engineer showing such encroachments. He also advised that City Council had directed that he notify Parker that the encroachments were to be removed by January 1, 1967. Under date of December 21, Parker's attorney replied to the effect that he regarded Spivey Beach Road as abandoned.

From December 1966 until August 1970 there were various conversations between the respondent Parker and the city officials as to the encroachments upon the right of way of Spivey Beach Road. Parker erected a fence across Spivey Beach Road to the east of the city's eastern pumping station, located upon property abutting Spivey Beach Road, with a gate therein through which the city had to go to gain access to its pumping station. Immediately to the west of the swash area the respondent Parker erected another fence across Spivey Beach Road. Parker paved all of Spivey Beach Road between Fourth Avenue South and Yaupon Circle not previously paved by the city, but at least a part of the roadway was graded by the city at city expense preparatory to paving. About 1967 or 1968, the city installed storm drains in a portion of Spivey Beach Road which is now in controversy. On or about August 5, 1970, Parker and Strand constructed another fence across Spivey Beach Road near its intersection with Yaupon Circle, thus cutting off not only access of the public to the use of Spivey Beach Road but the city's access to its western sewer pumping station. This latter fence was subsequently removed.

The only other fact of any particular consequence requiring mention is that in August 1970 the city accepted as its official zoning map one which showed Spivey Beach Road "stubbed off" as it entered the amusement park area from either side of the swash.

Upon the foregoing facts the master concluded that the city had in fact abandoned its rights in and to the disputed section of Spivey Beach Road and that, moreover, it was estopped under the circumstances to thereby assert any right in and to the same. The circuit judge modified the master's findings and conclusions to the extent of allowing the city to retain and maintain its facilities and pipes beneath the "abandoned road" and to install such subsurface pipes as it might reasonably need, and further, that it was entitled to its rights in Spivey Beach Road "as a road as far south as the south side of its sewage pumping station which is located on the north side of Withers Swash".

By reference to the plats it is obvious that by the last quoted language his Honor intended the following "as far west as the west side of its sewage pumping station which is located on the east side of Withers Swash". But for protecting, in this manner, the city's right of access to its eastern pumping station from the eastern end of Spivey Beach Road neither the master nor the circuit judge in any manner passed upon the city's rights as the owner of property bounding upon Spivey Beach Road and conveyed to the city by reference to the said road and the plat by which it was dedicated.

Both the master and the circuit judge relied upon the following seven facts as showing an unequivocal intention on the part of the city to abandon that portion of Spivey Beach Road which traverses the swash or park area, to-wit: (1) The absence of the bridge over Withers Swash run for about 25 years, rendering through traffic impossible. (2) Failure of the city to maintain the bridge and the portion of the road passing through the amusement park area. (3) The appropriation in 1949 of money to remove a portion of the remains of the bridge. (4) The erection by the city of its western pumping station in the right of way extending some eighteen feet from the southern boundary thereof. (5) The action of the city in changing the zoning to permit the con-

struction of the park, based upon a plat showing the road as " 'stubbed' " off and referring to the Spivey Beach Road in the official minutes of the meeting "as seemingly abandoned". (6) The acceptance of a zoning map in August 1970 showing Spivey Beach Road similarly " 'stubbed off' ". (7) The failure of the city to attempt to enforce its rights from the construction of the park in 1966 until August 1970.

Only 5 and 6 above require, we think, any elucidation or comment. At the January 1965 meeting of City Council, the issue before the city was whether the areas would or not be rezoned, there being no issue before it as to the abandonment of any public street or any portion thereof. Whether the fact that Spivey Beach Road was "stubbed off" on the plat attached to the petition for rezoning even came to the attention of any member of City Council is not reflected by anything in the minutes or the testimony. The reference in the minutes to Spivey Beach Road as "seemingly abandoned" is contained in a description of a southwestern portion of the land included within the petition for rezoning, but not actually rezoned at that meeting, and it is only reasonable to infer, we think, under all of the circumstances that the language in the description with reference to Spivey Beach Road as "seemingly abandoned" was the language of the respondent Parker or his agent, and not the language of City Council.

The fact that the zoning map accepted by the city in 1970 showed Spivey Beach Road similarly stubbed off is, we think, of no significance. There is nothing to show that City Council was on that particular occasion concerned with what, if any, street or street rights were to be abandoned; it then being concerned rather with how the various areas of the city were to be zoned. Moreover, at the time, the city was in an active controversy with the respondents about its rights in the street, which ultimately resulted in this litigation and it is totally unreasonable to infer, under the circumstances, that the city by the virtually simultane-

ous acceptance of the zoning map intended thereby to either abandon or acknowledge the abandonment of any rights whatever in Spivey Beach Road.

We are convinced that the basic conclusions of both the master and the circuit judge were erroneous and predicated in large measure on a misconception as to what principles of law were applicable to the instant controversy. We proceed to a consideration of the properly applicable principles of law in the light of the established facts and the only inferences which we think may reasonably be drawn therefrom. It is clear that prior to the destruction by casualty of the bridge over the water course flowing through Withers Swash, Spivey Beach Road throughout its length was a fully dedicated, publicly accepted street. Aside from any rights which it later acquired as a property owner abutting upon said street, the city held the street in trust for the use and benefit of the general public without the power of converting it to any use inconsistent with its use as a street. As pointed out in *Outlaw v. Moise*, 222 S. C. 24, 71 S. E. (2d) 509, the law recognizes a distinction between public and private easements arising from subdividing property and the sale of lots according to a plat thereof. While the city did not have the right to use Spivey Beach Road for purposes inconsistent with its use as a street, the law is well settled that,

"By the dedication of land for a street, the municipality acquires not only the easement of passage, but also the right to grade and improve the surface of the street, and to lay sewers, drains, and pipes for various utilities beneath the surface." 23 Am. Jur. (2d) 51, Dedication, Section 57.

In accordance with the foregoing is *Leppard v. Central Carolina Telephone Co.*, 205 S. C. 1, 30 S. E. (2d) 755.

Additionally, Sec. 59—490 of the 1962 Code, specifically authorizes the use by a city of public streets, roads, etc., for the purposes of a sewage system. As to the abandonment of an easement, there are, we think, clear distinctions between principles of law governing the abandonment of private

easements and those controlling the abandonment by a public body of an easement which it holds in trust for the public, which distinctions were overlooked below.

■■ With respect to the abandonment of a public, as opposed to a private easement, the following general principles of law seem to be firmly established.

"An abandonment occurs where the use for which the property is dedicated becomes impossible of execution, or where the object of the use for which the property is dedicated wholly fails. Any use which is not inconsistent with the declared purpose of a dedication will not support a charge of abandonment.

"Acts of municipality. The rights of purchasers under a map and of the general public cannot be lost by the unauthorized acts of the governing or controlling officials of the municipality, or by their neglect, but only by legal abandonment by the public as well as the officials." 26 C. J. S. Dedication § 63 at page 552.

"An easement created by dedication may be abandoned by unequivocal acts showing a clear intent to abandon. To constitute abandonment, the use for which the property is dedicated must become impossible of execution, or the object of the use must wholly fail. Generally, a mere misuser or nonuser does not constitute abandonment of land dedicated to public use." 23 Am. Jur. (2d) 57, Dedication, Sec. 66.

"A municipal corporation holding and controlling its streets in trust for the use and benefit of the general public, without power of converting them to any other use, it follows necessarily, that the right to vacate a street is to be exercised only when the municipal authorities, in the exercise of a sound official discretion, determine that the street is no longer required for the public use or convenience." *Bethel Methodist Episcopal Church v. City of Greenville,* 211 S. C. 442, 45 S. E. (2d) 841.

In *Chaffee v. City of Aiken,* 57 S. C. 507, 35 S. E. 800, it was held, *inter alia,* that the mere nonuser of a dedicated street or alley of a town for twenty years would not amount to such abandonment as would destroy the right of the public to the street.

Under Sec. 47-1327 of the 1962 Code, the city had the power to close Spivey Beach Road if "in its judgment" such was necessary for the improvement or convenience of the city. But, as was held in *Bethel Methodist Church, supra,* this power may be exercised only when it is determined by the council, in the exercise of a sound official discretion, that the street is no longer required for the public use or convenience. There is here no evidence of the city ever having considered the matter, let alone having concluded in the exercise of a sound official discretion that any portion of Spivey Beach Road was no longer required for public use or convenience. It should also be pointed out that neither the city nor any of the respondents have sought through the courts to have Spivey Beach Road or any portion thereof closed or abandoned in accordance with the procedure set forth in the 1962 Act of the General Assembly codified as Secs. 33-521 *et seq.* in the supplement to the 1962 Code.

Under the applicable principles of law we conclude that the facts of the case simply do not warrant a holding that the city has abandoned any portion of Spivey Beach Road. At most, there has been a cessation of use of the same for through traffic between Yaupon Circle and Fourth Avenue South due to the casualty loss of a bridge over the run of the swash. Otherwise, the road in the controverted area has been and still was being used, at least to a limited extent, when this controversy arose for usual street purposes, and for other consistent and lawful purposes. The respondents cite authority for the proposition that a segment of a dedicated public easement may be accepted without accepting it in its entirety and that likewise a segment thereof may be abandoned without abandoning such

in its entirety. It is then argued that the city could and did abandon the particular section of Spivey Beach Road for the purpose of travel, although admittedly not abandoning it for purposes such as sewer, storm drains, etc. We know of no authority, however, and none is cited for the proposition that a public easement may thus be partially abandoned by a municipality as to a particular use while retaining the use for all other permissible purposes.

Under the applicable law we are of the view that the lower court was in error in holding that the city had abandoned any of its rights in the public easement which it held in Spivey Beach Road in trust for the public.

We are likewise of the view that the lower court was in error in holding that the city was estopped to assert its rights in the particular segment of this public easement. Even if we were dealing strictly with private parties and private rights, not all of the essential elements of estoppel are present. The respondent Parker admittedly knew at inception of the existence of the sewer lines in the right of way. Parker's agent, Dorman, testified that he knew Spivey Beach Road was used by the public for many years, the existence of the sewer lines, pumping stations, etc., all of which were communicated to Parker. It is also elementary that Parker was charged with knowledge gained by his attorney in the examination of the public records. In addition, we fail to see where the record disclosed anything affirmatively or actively done by the city to mislead Parker or the other respondents to their detriment in any manner or particular.

Aside, however, from the foregoing, it is here sought to invoke the doctrine of estoppel against a municipality with respect to a public street, which involves considerations not necessarily involved in a dispute between private parties. It is well settled in this State, if not everywhere, that no rights in a street can be acquired against a municipality by adverse possession. *Crocker v. Collins*, 37

S. C. 327, 15 S. E. 951, 34 Am. St. Rep. 752; *Grady v. City of Greenville,* 129 S. C. 89, 123 S. E. 494. We quote the following from the last cited case:

"Mere adverse possession, for the statutory period, of a street or alley in a town can confer no title. *Crocker v. Collins,* [37 S. C. 327, 15 S. E. 951] *supra.* Hence, the application of the doctrine of equitable estoppel to cases involving the streets of a municipality is, in principle, so doubtful that [the] courts and text-writers agree that the case in which it may be invoked should be exceptional in character. Dillon on Municipal Corp. § 667; Elliott on Roads and Streets, ————; *Webb v. Demopolis,* 95 Ala. 116, 13 So. 289, 21 L. A. R. 62. The extent to which our own court has gone in recognizing and approving this doctrine is thus stated in *Crocker v. Collins, supra:* 'But where such possession (adverse possession for the statutory period) is acompanied with other circumstances, which would render it inequitable that the public should assert its rights to regain possession, then, upon the principle of estoppel, a party may be protected against the assertion of right by the public, in order to prevent manifest wrong and injustice.' "

"It will be noted that the foregoing view authorizes the application of the principle of estoppel only where there has been adverse possession for the statutory period, and then only to prevent manifest wrong and injustice." See also *Solen Corp. v. Robertson,* 142 S. C. 56, 140 S. E. 236.

It thus appears that the two additional elements essential to invoke the doctrine of estoppel against the city with respect to a public street are also absent in the instant case. There is no showing of any manifest wrong or injustice to any of the respondents, nor is there any adverse possession for the ten year period necessary even between private litigants. In view of the provisions of Sec. 10-121 of the 1962 Code, it would seem unlikely that adverse possession for even ten years, as opposed to twenty years, would have been sufficient to invoke the doctrine of estoppel under the princi-

ples set forth in *Crocker* and *Grady*, but we need not here decide that question.

With further reference to Sec. 10-121 of the Code, the respondents urged, as an additional sustaining ground that appellant's action was barred because not commenced within the "time or times" specified in said Section. In their brief, the respondents argue said Code Section not as a bar to the action, but rather that said Section, in effect, constitutes "an abandonment statute". Assuming that the respondents have not abandoned their additional sustaining ground, we find no merit in the argument that said Section constitutes an "abandonment statute".

In view of the conclusions already hereinabove announced, we find it unnecessary to discuss the rights of the city as the purchaser of a lot abutting Spivey Beach Road, a matter that was only tangentially and to a very limited extent passed upon by the court below.

The judgment below is reversed and the cause remanded for such further proceedings, not inconsistent with the views herein expressed, which may be deemed necessary and appropriate.

Reversed and remanded.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.