Curia, per
Evans, J.
In the case first stated. After the great number of decisions which have been made in our own courts, and in other States, it cannot now be well questioned whether the Commissioners of the Roads may not maintain an action ; ( Commissioners of Poor vs. Pooling, 1 Bailey, 73; 1 Nott and M'Cord, 554; Angel and Ames on Corp. 17; 13 Mass Rep. 192.) Whether they should bring it by their official title as commissioners, or whether the action should not be in their individual names, styling themselves Commissioners, it is not necessary to the decision of this case to determine; such an objection as was decided in the case of The Commissioners of the Roads for St. Peter's Parish vs. Guerard, (1 Speers, 216) could only be taken advantage of by a plea in abatement, which has not been done in this case.
By the 5th sec. of the Act of 1825, (9 Stat. 559) which *346 purports to be an Act to reduce all Acts relating to the power and duty of Commissioners of Roads into one Act, and which repeals all prior inconsistent Acts, the Commissioners of the Roads “ are authorized and required to lay out, make and keep in repair, all such roads, bridges and causeways, as have been, or shall hereafter be, established by law, or as they shall judge necessary, in their several parishes and districts ; provided, however, that no Board of Commissioners of Roads shall hereafter have power to open any new road, until they shall have given three months previous notice, by advertisement, in the settlement through which the intended road is to be opened ; nor shall any new road be opened through the lands of any person who shall signify to the said board any opposition, unless by permission of the Legislature.” It has been contended in the argument by the counsel for the appellees, that the object of the notice was to give the land-owners alone notice, and if their consent was obtained, as seems to have been done in this case, no further notice was necessary ; but such does not seem to me to be the true construction of the Act. Other persons besides the owners of the land, have an interest in a road. The opening and keeping it in repair devolves on others, and their objections should be heard by the board before they act on the subject. The Act requires that three months, previous notice shall be given by advertisement in the settlement, as a preliminary to the opening of any new road; and unless this was done, the commissioners had no authority under the Act to open the road, and to fine the defendant for not working on it. It was, therefore, an important inquiry in this case, whether such notice had been given. It does not appear, from any direct evidence, that any notice by advertisement was given ; but the law does not require that any order to that effect should be entered in the records of the board, or that copies of the.advertisement should be preserved, nor does it point out any mode in which the fact is to be proved. It is, therefore, like any other fact not required to be established in any particular mode, and might be proved by any evidence, either express or presumptive, which satisfies the jury the fact existed. The Commissioners of the roads are *347 a body of great respectability, in whom very great, and almost unlimited., powers are vested. They are public agents, and it is. fair to presume, when they do an act, that they have complied with all the' pre-requisites to the exercise of their power. The requisitions of the Act, I suppose, would be complied with by putting up anotice at some public place in the neighborhood, and if strict proof of it were required, after a lapse of ten or twenty years, it could scarcely ever be made, and more especially in such a country as this road passes through, where only three or four planters reside a part of the year, and perhaps as many overseers. The road along the travelling bank was ordered to be laid out in 1836, nearly eight years before the trial. When the length of time and the sparseness of the population is considered, I should regard it as an extraordinary circumstance, if any direct evidence of the fact had been furnished. I think, therefore, the jury were authorized to presume, from the facts proved, and the length of time, that the commissioners had given the notice required by law, and their verdict ought not to be disturbed on that ground.
By the 11th sec. of the Act of 1825, 9 Stat. 560, the commissioners are directed to subdivide the roads under their direction, and assign each commissioner one division, over which he shall have the superintendence, and be responsible for the roads in his division ; but there is nothing in this provision which authorizes him to make new roads, or to alter any road already established. But although a single commissioner may not have the power to make such an alteration or deviation as was made by Mr. Tyler in this road, yet the power of the board to make alterations in a road, cannot well be doubted. It is not making a new road, it is only the making of such alterations and deviations in a road already existing, as in their judgment the public interest may require ; and as such alteration is not a new road, I do not suppose that that part of the Act of 1825 which requires a public notice to be given, has any application. But, as was said by the circuit judge in his charge to the jury, this must be done in good faith, and not, under the pretence of alteration, to make a new road, and thus elude the giving of notice as required by law. The *348 jury by their verdict have established the bona fides of the commissioners in this case. I think, therefore, the road which the appellant was required to work on, was a public road legally established. The remaining questions relate to the liability of the defendant to work on it, and his liability to be fined for not doing it.
By the 9th sec. of the Act of 1825, 9 Stat. 560, the commissioners “ have power to prescribe .and direct how far, and on what roads, the persons and slaves within their respective districts shall be compelled to work,” but none “ shall be compelled to work on any road, unless some part of the said road shall be or pass within ten miles of his or her or their place of residence, or within ten miles of the plantation whereon such slaves are employed the greater part of the year.” In the year 1827, 9 Stat. 576, it was enacted that “ no person or persons, or his or her or their slaves, shall be compelled to work ore any part of anyroad ata greater distance than ten milesf &c. This was repealed the next year, 9 Stat. 582, and again in substance reenacted in 1841. Acts 1841,p. 159. But at the time this default was made, the Act of 1825 was of force. It appears from the report, that the terminus of the road was four miles from the defendant’s plantation, in a direct line, and nine miles by the river, which was the only practicable route to the road ; so that whether the distance be computed by either of these modes, the defendant’s plantation, the slaves on which were required by order of the commissioners to work on this road, was within ten miles of some “part of the road.” The obvious reasoning of this Act is that if any part of the road be within ten miles, it is sufficient, although other parts of the road may be at a greater distance ; and such seems to have been the Legislative interpretation, as appears from the repeals and re-enactments before mentioned. In this view of the case, it is immaterial by which mode the distance is computed. The several Boards of Commissioners for the cuts and inland navigation, are wholly distinct organizations from the Commissioners of the Roads, and it is no exemption from road duty that a man works on a cut, unless he be exempted by law from working on one because he works on the other, which *349 is not the case in relation to Watt’s Cut. Fenwick Island, where the defendant’s plantation is, is in St. Bartholomew’s Parish, and his slaves are within the jurisdiction of the Commissioners of Roads for that parish — and it is no excuse that they work on Edisto Island, where the defendant lives, which is within another jurisdiction.
It appears from the report of the presiding judge, that when the defendant was warned to work on the road, he was notified, in case of default, to appear before the Board at the time and place of their meeting, to make his excuse. The Act requires he sbould'be summoned by two days notice, and if he has the requisite notice, it is-a sufficient summons ;— it cannot be material at what time it was given. The defendant knew he had made default, and the time and place of making his defence, if he had any; and this, so far as I am informed, is the usual, if not the universal mode of summoning defaulters to appear before the board. The presiding judge was of opinion, that as the commissioners had no jurisdiction where the default exceeded twenty dollars, there was no necessity to summon the defaulter before the board, but an action would lie against him for the original default, without any action of the board. There are many reasons why there should be some action of the board, prior to any suit for the default, but as we think the notice was sufficient, it is not necessary to decide whether the action will lie without it. If prior action of the board be necessary, then the defendant has been lawfully summoned, and the fine lawfully imposed. If the action can be maintained without it, then the summons was an act of supererogation merely, so that in either view the action can be maintained. This disposes of all the grounds of defence made for the appellant, and the motion is dismissed.
Richardson, O’Neall, Butler and Wardlaw, JJ. concurred.