6794

### SOUTHERN RY.—CAROLINA DIVISION v. HOWELL.

1. EVIDENCE.—In this case the plaintiff having acquired the property and franchises of the Spartanburg and Asheville Railroad Company, whose charter invests it with all the rights, privileges and immunities of the Greenville and Columbia Railroad Company, it was proper to put in evidence the charter of the Greenville and Columbia Railroad Company, the contest being over the width of the right of way of plaintiff.

2. RAILROADS—RIGHT OF WAY—PURCHASER FOR VALUE WITHOUT NOTICE.—Where the charter for a railroad company provides that in the absence of a written contract in relation to the land through which the road runs, it shall be presumed the land on which the road is constructed and one hundred feet on each side has been granted to it; one owning land adjoining the railroad who traces title to the original owner, who conveyed to the railroad company a right of way, but whose deed was never recorded, has notice of the claim of the railroad company, which owned and operated a railroad there at time of his purchase, and is not a purchaser for value without notice of the claim of the railroad company of the right of way.

3. EVIDENCE—ADMISSIONS— RAILROADS— SUPERINTENDENT—MASTER AND SERVANT—ISSUES.—A LETTER written by the superintendent of a railroad company in reply to one written by a party claiming a part of the right of way claimed by the company, to the effect that it is "our understanding that we own fifty feet on each side of the main track," is an admission against interest. Whether the superintendent had the power to bind the company in this way is a question for the jury under the facts of each case.

4. RAILROADS—RIGHT OF WAY—EVIDENCE.—In controversy about the width of a right of way, that the railroad company permitted other persons, on the opposite side of the main track, to use the land nearer the track than claimed on the side in controversy, is not competent.

Before DANTZLER, J., Spartanburg.   Reversed.

Action by Southern Railway Company—Carolina division against J. L. Howell.   From judgment for plaintiff, defendant appeals.

*Messrs. Simpson & Bomar,* for appellant, cite: *Issue of authority in superintendent to write the letter is for jury:* 55 S. C., 573.   *Notice by possession was changed by Sec.* 2457, *Code* 1902: 22 S. C., 32; 21 S. C., 420; 23 S. C., 492; 24 S. C., 285; 29 S. C., 147.

*Messrs. Sanders & DePass,* contra, cite: *Admission of superintendent can not deprive the company of its property:* Bald. Am. R. R. L., 53-4; 2 Cooke on Corp., Secs. 726, 709; 34 Am. St. R., 815.   *The word "understanding" is of doubtful meaning:* 19 S. C., 412; 56 S. C., 485; 11 S. C., 68. *Defendant is not purchaser for value without notice:* 14 S. C., 312; 72 S. C., 228.   *Defendant is now estopped from claiming this land:* 15 S. C., 476.   *Acts permitted on opposite side do not estop them from making claim on this:* Big. on Est., 552; 11 Ency., 424, 431, 434; 40 S. E. R., 587, 633. *Charter is constructive notice of width of right of way:* 72 S. C., 228.   *That manner of condemning right of way in charter of G. & C. R. R. and of S. & A. R. R. is different*

*does not prevent provisions of former applying to latter:* 28 S. C., 388; 3 S. C., 381.

March 6, 1908.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   The plaintiff in this action seeks to enjoin the defendant from obstructing its right of way.

At the trial, the plaintiff introduced in evidence the charter of the Spartanburg and Asheville Railroad Company, authorizing the company to construct a railroad from Spartanburg to the North Carolina line, in the direction of Asheville, and vesting it "with all the rights, privileges and immunities granted to the Greenville and Columbia Railroad Company."

The charter of the Columbia and Greenville Railroad Company, passed the 15th of December, 1845, 11th Stat., 348, was also introduced in evidence.   Sections 9, 10 and 11 of the charter of the Greenville and Columbia Railroad Company provide for the mode and manner of acquiring land for its right of way and give to this company the power to take and acquire one hundred feet in width on each side of its roadway, measuring from the center of the track.   The introduction of this charter in evidence was admitted against defendant's objections.

This charter was amended on the 19th of December, 1849, 11th Stat., 561, so as to give the company the right, if it desired to do so, to take a less quantity than one hundred feet in width on each side of their roadway.

The property and franchises of the Spartanburg and Asheville Railroad Company were sold under foreclosure proceedings, and certificate filed in the Secretary of State's office.   By these proceedings the name was changed from the Spartanburg and Asheville to the Asheville and Spartanburg Railroad Company.

By an act of the Legislature, approved the 19th of February, 1902, the Asheville and Spartanburg Railroad Com-

pany was consolidated with others under the name of the Southern Railway—Carolina Division, and this company was authorized to lease, and did lease, all of its property to the Southern Railway Company.

The Spartanburg and Asheville Railroad Company, under its charter, constructed its road from Spartanburg towards Asheville, to a point on the North Carolina line, and instead of condemning land for its right of way at Campobello, obtained a deed from John Bankston Davis, through whom both the plaintiff and the defendant claim. This deed was dated the 13th day of July, 1847, and conveyed to the Spartanburg and Asheville Railroad a strip of land two hundred feet in width; that is to say, "all the land contained within one hundred feet in width on each side of the track or right of way of any portion of the lot of land hereinafter described, through which said railroad may be constructed, run and operated."

Davis died in 1888, leaving a will whereby he devised his land to his niece, the wife of I. W. Wingo.

Mrs. Wingo, on the 20th of April, 1896, conveyed all of the land which had been devised to her by her uncle, to her husband, I. W. Wingo.

On the 27th of December, 1900, I. W. Wingo conveyed a part of the land which had been deeded to him by his wife to J. L. Howell.

The description of the land in the deed from Wingo to the defendant, Howell, is as follows: "Beginning at a stone in the center of Church Street, in the line of W. W. Camp, and running with said line to a stone fifty feet from the center of main line R. R. track, 5. 71 1-2 chs., thence parallel with said R. R. and fifty feet from it, 10.09 chs. to an iron pin near the depot, thence S. 64 1-4 W. 1-61 chs. to a gum 3xN. M., thence S. 33 1-2 102 chs. to a pin in center of Davis Street, etc."

Wingo and Howell each knew, when the land was conveyed to them respectively, that the railroad had its main

and side-tracks running through this land, and that it was operating its railroad at that time.

When Howell purchased the land, the railroad was using the part involved in this suit as a driveway and yard, for the purpose of allowing persons to haul wood, lumber, etc., and placing the same thereon for the purpose of being shipped over its road.

Sometime after he purchased, Howell built a fence up to within fifty feet of the center of the main line of the railroad, and undertook to prevent people from driving over this land unless they paid for the privilege.

Howell was requested to move this fence. This he failed and refused to do. This suit was then brought to obtain an injunction and to require him to remove the fence.

The defenses set up by the defendant are:

(1) A denial of the right of the plaintiff to any part of the land fenced in by the defendant.

(2) That he is an innocent purchaser for value without notice.

(3) That the plaintiff is estopped from claiming any of this land as its right of way, by reason of the conduct of its agents and servants.

The jury rendered a verdict in favor of the plaintiff for the possession of the land in dispute, and the defendant appealed.

The first question that will be considered is, whether there was error on the part of his Honor, the presiding judge, in allowing the plaintiff to introduce in evidence the charter of the Greenville and Columbia Railroad Company.

The Spartanburg and Asheville Raliroad Company was invested "with all the rights, privileges and immunities granted to the Greenville and Columbia Railroad Company." It was, therefore, necessary to introduce in evidence the charter of the Greenville and Columbia Railroad Company in order to ascertain the rights, privileges and immunities conferred upon the Spartanburg and Asheville Railroad

Company. The exceptions raising this question are over-ruled.

The next question for consideration is whether the defendant was a purchaser for valuable consideration without notice under the recording act, as there was a failure on the part of the Spartanburg and Asheville Railroad Company to record the deed executed in its favor by John Bankston Davis.

The charter of the Greenville and Columbia Railroad Company provides, "that in the absence of any written contract between the company and the owner or owners of the land through which the said railroad may be constructed, in relation to said land, it shall be presumed that the land upon which the said railroad may be constructed, together with one hundred feet on each side of the center of said road, has been granted to the said company by the owner or owners thereof."

The facts in the case are similar to those in *Harmon* v. *R. R.*, 72 S. C., 228, 235, 51 S. E., 689, in which the Court uses this language: "The plaintiff can not be regarded as a purchaser for valuable consideration without notice of the railroad company's right of way, because he had actual notice that the railroad was being operated through said land at the time of his purchase, and he had constructive notice, or is presumed to have known, that the company's right of way, in the absence of a written contract, extended one hundred feet on each side of the center of its track. In any event, he had knowledge of such facts as were sufficient to put him on inquiry, which, if pursued with due diligence, would have led to knowledge of the company's rights, and this is the equivalent of notice."

The ruling of the Court in that case is conclusive of the question under consideration, and shows that the exceptions assigning error in this respect must be overruled.

The next question to be determined is whether the presiding judge erred in ruling that the following letter, offered by the defendant, was not admissible in evidence, to wit:

"Charlotte, N. C., Oct. 24, 1899.

"Mr. I. W. Wingo, Campobello, S. C.

"Dear Sir:—Referring to previous correspondence about our right of way at Campobello, it is my understanding that we own fifty feet on each side of main tack.

"Yours truly, W. B. Rider, Supt."

The letter was in response to one from I. W. Wingo.

The two grounds upon which the presiding judge ruled that the letter was incompetent were (1) that it was merely the expression of opinion on the part of Rider, and (2) that there was no evidence of his having authority to bind the company by making any statement or admission as to its right of way.

There was much testimony introduced as to the power and authority of W. B. Rider, the superintendent, to bind the company by said letter.

In discussing the powers of a superintendent, the rule is thus stated in 1 Wood's Railway Law, Section 162 : "He acts as the general agent of the directors, in the running and operation of the railroad, and is usually the officer who has, at least, the general supervision of the employment of the necessary help, and the immediate general management of all the business relating to the operation of the road. He is employed or appointed by the directors, and within the scope of his duties and powers, actual or implied, can bind the corporation where the directors themselves could do so. If, as is generally the case, the powers and duties of a superintendent are not defined, then his authority is to be measured by usage, and what he has been permitted to do by the corporation, and the incidents thereof."

In the case of *Wilson* v. *Ry.,* 51 S. C., 79, 28 S. E., 91, the Court uses this language: "Whether an engineer, brakeman or switchman is, when exercising his ordinary duties, a fellow-servant with a car-cleaner, is a question of law. But whether, in a particular case, either of them was engaged in performing certain acts which the law required

of the master, and which would prevent them from being fellow-servants, is a question of fact, to be determined by the jury. The question as to who are fellow-servants is a mixed question of law and fact. It is for the Court to define the relation of fellow-servants, but it is for the jury to determine whether the employees, in a particular case, come within the definition."

As a general rule the power of a superintendent to look after the company's right of way is incidental to such office. But the question whether Rider was authorized to write the said letter depended upon the facts of the particular case, and should have been submitted to the jury.

We can not accept the construction of the presiding judge that the language of the letter indicated a mere opinion. It was intended to give information as to the boundary line between the lands of Wingo and the plaintiff, and was in the nature of an admission against interest. The defendant is in privity with Wingo, and succeeded to his rights. The exceptions raising the question under consideration are sustained.

The exceptions assigning error in refusing to allow the defendant to introduce testimony to show that the plaintiff permitted other parties to use its right of way, on the opposite side of the track, can not be sustained, as the rights of the defendant were not involved.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded for a new trial.