0568

E. Spann HAMMOND, as Trustee Under the Will of James H. Hammond, deceased, Appellant, v. Ashley HALSEY, Jr., Elizabeth M. Halsey, The Society for American Antiquities, Hugh M. McLaurin, III, The Sumter County Historical Society, Dick Anderson #75 Daughters of the Confederacy, and the State of South Carolina, Respondents.

(336 S. E. (2d) 495)

Court of Appeals

*Halcott P. Green*, Columbia, *for appellant.*

*Harry B. Burchstead, Jr.*, Sumter, *for respondents Ashley Halsey, Jr., Elizabeth M. Halsey*, and *The Society of American Antiquities.*

*Edward V. Atkinson*, Sumter, *for respondent the Sumter County Historical Society.*

*Marilyn G. Ayers*, Sumter, *for respondent Dick Anderson #75 Daughters of the Confederacy.*

*Asst. Atty. Gen. Richard B. Kales, Jr.*, Columbia, *for respondent State of South Carolina.*

Heard June 19, 1985.

Decided Oct. 30, 1985.

BELL, Judge:

E. Spann Hammond, as Trustee under the will of his father, the late Senator James H. Hammond, commenced this action to recover possession of an 1857 Spanish cannon barrel formerly in Senator Hammond's possession, but now in the possession of Ashley Halsey and others. The Trustee alleged title to the cannon is in Senator Hammond's estate. Halsey answered, denying Senator Hammond's title. The jury found for Halsey. The Trustee appeals. We affirm.

Senator Hammond acquired the cannon barrel in 1946. The barrel was totally inoperative while in his possession. In June 1965, following conversations with Ashley Halsey, Jr. and William E. Brunson, Jr., Senator Hammond delivered the barrel to the Sumter Electric Rewinding Co., owned by Brunson. The barrel was then restored by removing the spike, cleaning and polishing it, and mounting it on a newly constructed wooden carriage. Brunson contributed most of the money and labor toward the cannon's restoration.

Restoration was completed in early 1966. In March 1966, Senator Hammond, Halsey, Mrs. Halsey, and Lucy Hampton Bostick incorporated the Society for American Antiquities. The purpose of the Society, stated in its charter, was "[t]o acquire, preserve and hold relics of the State and Nation for public display in Museums, exhibits and educational institutions, and to conduct related activities in furthering this purpose." Senator Hammond was Vice-President, and Halsey was President of the Society. Following Mrs. Bostick's death in 1968 or 1969, Brunson was selected to fill her position as Trustee of the Society in recognition of his significant contribution to the cannon's restoration.

Once restoration was completed, the cannon was displayed and fired on several occasions. The cannon was moved from Brunson's Sumter Electric Rewinding Co. to the old Sumter National Guard Armory. The Sumter National Guard Unit was commanded by Hugh M. McLaurin, III. McLaurin had

custody of the cannon thereafter. He moved the cannon to Manning in 1970 or 1971 when he assumed command of the Manning National Guard Unit. In 1973 McLaurin moved the cannon back to the Sumter National Guard Armory, where it remains today.

Senator Hammond died in 1970. His will appointed his son, E. Spann Hammond, as Trustee of the estate's personal property. The cannon was not listed in the July 1970 Warrant of Appraisement of Senator Hammond's estate. In addition, the Receipt and Release filed by the Trustee in probate court in December 1973 did not list the cannon as an undistributed asset of the estate.

The Society lost its incorporated status in 1975 for failure to pay fees to the State. However, Halsey and Brunson continued to operate the Society until Brunson's death in 1982, during pendency of this suit. In March 1979, Halsey and Brunson desired to make a disposition of the Society's property, in particular the cannon, since Halsey was living in Virginia and Brunson was ill. Therefore, acting as the Society for American Antiquities, Halsey and Brunson transferred ownership of the cannon to themselves and to McLaurin as Trustees to hold, shoot, and display the cannon for the use and benefit of the South Carolina National Guard Unit in Sumter. Reversionary interests were created in the Sumter County Historical Society, Dick Anderson #75 Daughters of the Confederacy, and the State of South Carolina. In 1981 the State Legislature created the State Weapons Collection, housed at the Sumter National Guard Museum. The cannon, as part of this collection, is insured by the State for $32,000. The Trustee commenced this suit June 9, 1981, when he demanded and failed to obtain possession of the cannon.

The Trustee contends the trial judge erred in denying his motions for a directed verdict and for judgment n.o.v. on the issue of ownership of the cannon. In considering whether these motions were correctly denied, the evidence and all inferences therefrom must be viewed most favorably to the nonmoving party. *Bellamy v. General Motors Acceptance Corp.*, 269 S. C. 578, 239 S. E. (2d) 73 (1977).

The complaint alleged Senator Hammond transferred physical possession of the cannon in 1965 pursuant to a

written agreement that title to the cannon would remain with Senator Hammond, and the defendants would have non-vested rights to the cannon subject to the control of Senator Hammond and his successors. No such written agreement regarding title appears in the evidence. The burden is on a party pleading a fact to prove it. *Jackson v. Frier*, 146 S. C. 322, 144 S. E. 66 (1928); *Newton v. Bennett*, 111 S. C. 1, 96 S. E. 620 (1918).

It is undisputed Senator Hammond transferred possession of the cannon during his lifetime. Possession carries a presumption of ownership. *Jackson v. Frier*, *supra; Thompson v. Chapman*, 107 S. C. 461, 93 S. E. 142 (1917). This presumption of title places the burden on the Trustee to prove his superior title and right to possession. *Id.* The only evidence he adduced, however, is that Senator Hammond had possession of the cannon until 1965. The Trustee has not met his burden of proving that Senator Hammond retained title after he transferred possession of the cannon.

The Trustee argues the Society bears the burden of proving Senator Hammond made a gift of the cannon to the Society. No affirmative defense of gift was alleged by the Society, nor was that issue joined in the pleadings. The record reveals, rather, that the issue of gift was first raised by the Trustee in his motion for a directed verdict. As the party with the burden of proving superior title, the Trustee cannot challenge the sufficiency of the evidence to establish the Society's title. The Trustee must recover on the strength of his own title, not on the alleged weakness of the defendant's. *Robb v. Dobrinski*, 14 Okla. 563, 78 P. 101 (1904); *Kidd v. Little*, 194 Va. 692, 74 S. E. (2d) 787 (1953) (a plaintiff must recover, if at all, on the strength of his own case, not on the weakness or falsity of the defense).

In any event, we find sufficient evidence to support a reasonable inference that Senator Hammond, during his lifetime, gave possession *and* title to the Society. Senator Hammond transferred possession of the cannon to Halsey and Brunson in 1965, when the cannon was moved to Brunson's business. The Senator was aware Brunson expended considerable money and effort on the restoration. Senator Hammond incorporated the Society following the

cannon's restoration. Halsey, as President of the Society, testified that the cannon was the property of the Society. Since the Society's purpose was to "acquire" historic relics, the jury could reasonably infer that Senator Hammond created the Society as an entity to hold title to the cannon. The cannon was moved, displayed, and fired on several occasions under the control of other persons. The Trustee offered no evidence that Senator Hammond ever attempted to regain custody of or exercise control over the cannon after it left his possession in 1965. These facts support a reasonable inference that the Society owned the cannon.

We conclude the Trustee has failed to prove his allegations that title remained with Senator Hammond after 1965. In addition, there is evidence from which the jury could reasonably infer that Senator Hammond transferred title to the Society.

Since the record contains sufficient evidence to support the verdict on the question of title, it is not necessary to consider the Trustee's statute of limitations issue.

For the reasons stated, the judgment is

Affirmed.

SHAW and CURETON, JJ., concur.