1885

Irene J. HOOGENBOOM, Respondent v. The CITY OF BEAUFORT, Appellant.

(433 S.E. (2d) 875)

Court of Appeals

*William B. Harvey, III,* of *Harvey & Battey,* Beaufort, and *James B. Richardson, Jr., Svalina, Richardson & Smith,* Columbia, *for appellant.*

*Barry L. Johnson,* of *Biel, Clark & Johnson,* and *Mark H. Lund, III,* of *Novit & Scarminach,* Hilton Head Island, *for respondent.*

Heard Feb. 19, 1992; Decided Nov. 9, 1992.

Reh. Gr. Mar. 9, 1993; Op. Adh. to on Reh. Apr. 29, 1993.

BELL, Judge:

Irene J. Hoogenboom brought this action against the City of Beaufort, South Carolina, to quiet title to a parcel of land bordering a lot that she owns. The City denied title is in Hoogenboom, claiming the disputed parcel is the "street end" of King Street. In the alternative, Hoogenboom petitioned pursuant to S.C. Code § 57-9-10 to -40 (1976) for the "street end" to be closed and title to be vested in her by order of the court. The City objected to closing the street. The case was referred to the master in equity for entry of judgment with direct appeal to this Court. The master gave judgment for Hoogenboom on both claims. The City appeals. We reverse.

In 1986, Hoogenboom purchased an antebellum residence in Beaufort known as The Oaks. It is on a peninsular area historically known as Black's Point. Hoogenboom's lot is designated as Block 3 or Parcel 656 on tax maps and plats of record. It is depicted as a rectangular lot bounded on the north by Laurens Street; on the east by Parcel 656A, Parcel 656B, and the marsh of the Beaufort River; on the south by marsh and Par-

cel 656C; and on the west by Short Street. Parcel 656C is the land disputed in this suit. It is also called "The Extension."

**Diagram 1. Plat by R.D. Trogdon for Irene Hoogenboom,
January, 1987 (Pl. Exhibit 14)**

Black's Point was brought into the City of Beaufort in 1809 by an Act of the General Assembly. *See An Act to incorporate the several Societies therein mentioned, and for other purposes,* Acts and Resolutions of the General Assembly of South Carolina, 1809, 5 S.C. Stat. 597 (Cooper ed. 1839). In 1811, the General Assembly unauthorized the intendant and wardens of Beaufort to lay out streets on Black's Point. *See An Act to authorize the Intendant and Wardens of the Town of Beaufort, to lay out Streets on Black's Point, etc.,* Acts and Resolutions of the General Assembly of South Carolina, 1811, 5 S.C. Stat. 649 (Cooper ed. 1839). The Act of 1811 required the City to pay for "the damage sustained by any proprietor of a lot or lots, through which any of the said streets may be so laid out." The Act also provided that upon payment of damages to the

proprietor, any street so laid out was vested in the intendant and wardens of Beaufort and "their successors in office, forever."

In the years before the Civil War the City laid out streets, including King Street, on Black's Point. Hoogenboom admits that The Extension was part of King Street going to the marshes of the Beaufort River until the end of the 19th century. It regularly carried pedestrian and vehicular traffic. It had a street lamp. It was fenced off from The Oaks.

Antebellum land records for Beaufort County were destroyed in the Civil War. The public records from 1863 to the present show The Extension as part of King Street. The legal description of Block 3, used in every conveyance from the earliest surviving deed in 1863 down to Hoogenboom's own deed in 1986, states that it is bounded on the south by King Street. As can be seen from the original plat of the Direct Tax Commissioners in 1863, the only part of King Street that bounds Block 3 on the south is The Extension.

No taxes have ever been paid on The Extension by the owners of Block 3. Paul Schwartz, Sr., Hoogenboom's grantor and immediate predecessor in title, owned Block 3 from 1957 to 1986. He never claimed ownership of The Extension. He testified that he understood the parcel belonged to the City.

**Diagram 2. Portion of Plat by U.S. Direct Tax Commissioners, January, 1863 (Pl. Exhibit 10A)**

## I.

In an action to quiet title, the plaintiff must recover on the strength of his own title, not on the alleged weakness of the defendant's title. *See Haithcock v. Haithcock,* 123 S.C. 61, 115 S.E. 727 (1923); *Hammond v. Halsey,* 287 S.C. 46, 336 S.E. (2d) 495 (Ct. App. 1985). One claiming title by deed has no greater title than the original grantor in the chain of title upon which he relies. *See Belue v. Fetner,* 251 S.C. 600, 164 S.E. (2d) 753 (1968) (a deed cannot convey an interest which the grantor does not have).

The master quieted title in Hoogenboom because he found "that The City has failed to establish that it owns fee title to The Extension." This was error. The burden was not on the City to establish its title, but on Hoogenboom to establish hers. Thus, we can affirm the judgment only if the evidence supports no inference except title in Hoogenboom.

## A.

As evidence of her title to The Extension, Hoogenboom proved an unbroken chain of conveyances of Block 3 from the 1863 deed of the Direct Tax Commissioners to her deed in 1986. In addition, however, she had to show that the United States Board of Direct Tax Commissioners, the original grantor in her chain of title, had the right to convey ownership of The Extension. The difficulty she faces is that there is no evidence the Commissioners could convey title to The Extension. On the contrary, it is evident they could not.

In 1861, Congress enacted legislation for the direct taxation of real property in the then existing forty-one states or territories and the District of Columbia. Act of Aug. 5, 1861, ch. 45, 12 Stat. 292. Many property owners in the Southern States refused to pay the tax because of the Civil War, so Congress enacted legislation in 1862 and 1863 authorizing special Direct Tax Commissioners to collect taxes in the "insurrectionary Districts." Act of June 7, 1862, ch. 98, 12 Stat. 422; Act of Feb. 6, 1863, ch. 21, 12 Stat. 640. The Acts directed the Commissioners to sell property for which the direct tax was not paid. In 1863, pursuant to this legislation, the Direct Tax Commissioners sold Block 3 for unpaid taxes.

As a matter of law, the Commissioners could only pass title to property that was subject to taxation, levy, and execution under the authorizing statutes. *See DeTreville v. Smalls*, 98 U.S. 517, 25 L.Ed. 174 (1878); *Stratos v. King*, 282 S.C. 501, 319 S.E. (2d) 356 (Ct. App. 1984). Those statutes specifically exempted from taxation property not subject to taxation under state law in 1861.

It is a well-settled rule that the property of municipal corporations, when appropriated to public uses, is exempt from taxation. *City of Somerville v. City of Waltham*, 170 Mass. 160, 48 N.E. 1092 (1898); *see also Van Brocklin v. Anderson*, 117 U.S. 151, 6 S.Ct. 670, 29 L.Ed. 845 (1886) (general tax acts of a state are never, without the clearest words, held to include its own property or that of its municipal corporation); *Foster v. City of Duluth*, 120 Minn. 484, 140 N.W. 129 (1913) (property of city not subject to taxation, to proceedings for the assessment of taxes, or for their collection by judgment and sale); *County of Erie v. City of Erie*, 113 Pa. 360, 6A. 136 (1886) (where there is no law for taxation of property owned by a city and used for public purposes, it is not taxable); 2 Cooley, THE LAW OF TAXATION § 621 (4th ed. 1924). This has always been the rule in South Carolina, for it has never been the policy of this State to tax its municipal corporations or other instrumentalities of government. *State v. City of Columbia*, 115 S.C. 108, 104 S.E. 337 (1920). More particularly, the South Carolina Constitution of 1790, which was in effect in 1861, made no provision for the taxation of real property held by municipalities. *See* S.C. Const. of 1790 art. X. Likewise, no South Carolina statute from 1682 to 1861 subjected lands of any municipality to a tax. On the contrary, in those few instances when the Legislature authorized direct ad valorem taxation of real property, it specifically exempted lands held for public or charitable purposes or by a municipal corporation. *See, e.g., An Act to raise supplies and to make appropriations for the year one thousand eight hundred and one; and for other purposes therein mentioned*, Acts and Resolutions of the General Assembly of South Carolina, 1801, 5 S.C. Stat. 417, 419 (Cooper ed. 1839). Thus, in 1861, land used for a public street was exempt from taxation under South Carolina law.

The Extension was being used as a public street in 1861. Consequently, the Direct Tax Commissioners could not place it on the tax rolls or assess, levy on, sell, or convey the property. Any purported sale of public property for unpaid taxes was legally void and passed no title to the purchaser. *DeTreville v. Smalls, supra; Braxton v. Rich,* 47 F. 178 (C.C.W.Va. 1891), *aff'd,* 158 U.S. 375, 15 S.Ct. 1006, 39 L.Ed. 1022 (1895). For this reason, a deed from the Commissioners could pass no title to The Extension. Because neither the 1863 tax deed nor any succeeding conveyance of Block 3 passed title to The Extension, Hoogenboom did not acquire a fee simple to The Extension by her deed.

Hoogenboom rightly points out that the Act of 1811 required the City to pay compensation for private property taken to lay out streets. She also correctly observes that the Act was not the exclusive means by which the City could acquire land for a street. However, she produced no evidence that the City acquired The Extension by some method other than paying compensation under the Act. It is not enough to speculate that the City acquired King Street by some means other than a taking under the Act of 1811. Hoogenboom was required to prove by evidence that the street was acquired by some means that left the fee simple interest in the private owner at the time King Street was laid out.

Ordinarily, when a municipality lays out a street over privately owned property, it acquires only a right-of-way over the property, not fee simple title to it. *See South Carolina State HIghway Department v. Allison,* 246 S.C. 389, 143 S.E. (2d) 800 (1965). However, it is common knowledge that, in some instances, municipalities in South Carolina, rather than the adjacent property owners, own the fee to the streets. *Id.* A statute giving the municipality the right to lay out streets may provide for the vesting of the fee in the municipality. *Neil v. Independent Realty Co.,* 317 Mo. 1235, 298 S.W. 363 (1927). If it does so provide, the taking of the property for a street divests the private owner of the fee simple interest and places it in the municipality. *Id.* To determine the rule applicable to a particular case, the court must look to the law in effect at the time the street was laid out. *Id.; State ex rel. McLeod v. Sloan Construction Co.,* 284 S.C. 491, 328 S.E. (2d) 84 (Ct. App., 1985); Co. Litt. 8b (3d ed. 1633).

The Act of 1811 was the law in effect when the City laid out the streets on Black's Point. The Act expressly vests streets laid out pursuant to its provisions in the intendant and wardens of Beaufort, "and their successors in office, for ever." At common law, these quoted words are the classic words of limitation for granting a fee simple absolute in land to a municipal corporation. *See* Co. Litt. 8b, 94b; 2 Bl. Comm. 109 (Tucker ed. 1803). By using these familiar terms of art, the General Assembly unquestionably intended to vest fee simple title to the streets in the intendant and wardens of Beaufort, i.e., in the municipal corporation.

It is undisputed that the intendant and wardens of Beaufort laid out King Street to the marsh of the Beaufort River. In the absence of evidence to the contrary, it must be presumed they complied with the statute authorizing them to take private property for the laying out of streets. *See Murray v. The Lower Board of Commissioners of Roads, for St. Bartholomew's Parish*, 30 S.C.L. (1 Rich.) 335 (1845). This inference is strengthened by the fact that no one, including Hoogenboom's grantor, disputed the City's title to The Extension for well over a century after King Street was laid out. Likewise, no private owner ever paid taxes on The Extension.[1] Based on this undisputed evidence, we hold that by operation of the Act of 1811, fee simple title was divested from the original owner of The Extension and vested in the City when it was laid out as part of King Street.

### B.

As an alternative to her claim of title by deed, Hoogenboom claims she has title by operation of law, because The Extension was dedicated to the City as a public way before the Civil War, but was abandoned by the City as a street sometime before 1920. We hold that Hoogenboom has not proved a dedication to the City.

Only the owner of a fee simple interest can make a dedication. *Safety Building & Loan Co. v. Lyles*, 131 S.C. 542, 128 S.E. 724 (1925). To prove a dedication of land to the public, the party claiming dedication must show that a person who owned the land intended to dedicate it to a public

---

[1] The failure to pay property taxes is evidence that weakens a claim of ownership. *Harrelson v. Reaves*, 219 S.C. 394, 65 S.E. (2d) 478 (1951).

use and that the dedication was accepted by the public. *Anderson v. Town of Hemingway*, 269 S.C. 351, 237 S.E. (2d) 489 (1977). The owner's intention to dedicate must be manifested in a positive and unmistakable manner. *Id.* A dedication need not be made by deed or other writing, but may be effectually made by acts or declarations. *Id.* Intent to dedicate may also be implied from long public use of the land to which the owner acquiesces. *Id.* Nevertheless, dedication is an exceptional mode of passing an interest in land, and the proof of dedication must be strict, cogent, and convincing. *Shia v. Pendergrass*, 222 S.C. 342, 72 S.E. (2d) 699 (1952). The acts proved must not be consistent with any construction other than that of a dedication. *Id.*

In an action to quiet title, the party claiming a dedication must show: (1) that the owner of the land upon which the street was laid out dedicated it to a public use, i.e., that the public acquired the street by dedication; (2) that the street has been abandoned; and (3) that he is the fee simple owner of the abutting property. If he fails to carry the burden of proof on any one of these elements, he fails to establish his title.

In this case, the master found no evidence of an express dedication of The Extension and, indeed, there is none. He did find part of one other street on Black's Point, Short Street, was expressly dedicated to the public in 1854. Although the master recognized that this did not prove The Extension was similarly dedicated,[2] he nevertheless found an implied dedication of The Extension. He reasoned that because the City failed to prove fee simple title to The Extension, a dedication could be implied as a matter of law. As we have already stated, however, the law placed the burden on Hoogenboom to prove dedication, not on the City to prove title. The facts adduced by Hoogenboom proved neither an express nor an implied dedication. Accordingly, the master erred in finding Hoogenboom acquired title by dedication and abandonment.

---

[2] *See Burns v. Goddard*, 72 S.C. 355, 51 S.E. 915 (1905) (terms of contract between plaintiff and defendant cannot be proved by showing terms of agreements made by plaintiff with others); *Southern Railway, Carolina Division v. Howell*, 79 S.C. 281, 60 S.E. 677 (1908) (evidence that railroad company suffered others to use a portion of its right-of-way on the opposite side of its track not competent to prove right of defendant to encroach on railroad's right of way on defendant's side of track).

## II.

As a second cause of action, Hoogenboom petitioned the court to vest title in her pursuant to S.C. Code § 57-9-10 to -40 (1976). That statute provides any interested person may petition the court to close a street. If the court determines the street should be closed, it "shall then determine in whom the title thereto shall be vested and issue an appropriate order." *Id.* § 20. The master awarded Hoogenboom decretal title under this statute. She argues that even if the City held fee simple title to The Extension prior to suit, the master's decree divested the City of ownership and transferred it to her. We reject this argument.

Ordinarily, when a street is laid out, the public acquires a mere right of passage over the land, with fee simple title remaining as it was before the street was laid out.[3] In such cases, when the public right of way ceases to exist, the fee simple is no longer burdened with the public right of passage and the private owner of the fee holds an unencumbered title to the land.[4] On the other hand, if the fee to a street is in the municipality, the vacating of the street as a public way leaves the municipality in possession of the property to use it for any public purpose that it may see proper, without regard to its former use. *See Marietta Chair Co. v. Henderson*, 121 Ga. 399, 49 S.E. 312 (1904). Section 57-9-20 must be construed with reference to these well-settled rules.[5]

We hold that Section 57-9-20 does not grant the courts power to divest the fee simple owner of title. Where the law gives only a public right of way over land held

---

[3] If there is a dedication, the public receives only a right of user, while the fee simple is left in the dedicator. *Boyd v. Hyatt*, 294 S.C. 360, 364 S.E. (2d) 478 (Ct. App. 1988). The dedication of a street for public use is not an absolute transfer of the soil, but only the grant of a right-of-way for as long as the public uses it. *Commissioners of the Streets of Georgetown v. Taylor*, 2 S.C.L. (2 Bay) 282 (1800). The laying out of a street for public use does not divest the title of the adjacent landowners to the land upon which the street is laid out; their rights remain the same, subject to the public right of passage over the land. *Id.*; *Charleston Rice Milling Co. v. Bennett & Co.*, 18 S.C. 254 (1882).

[4] Where a street dedicated to public use has been abandoned, the abandonment extinguishes the right-of-way and there is no longer a public right of passage over the land. *See Commissioners of the Streets of Georgetown v. Taylor, supra.* The fee simple interest in the dedicated land, which remained in the dedicator and his successors in title, then becomes unencumbered title in the abutting property owner. *City of Greenville v. Bozeman*, 254 S.C. 306, 175 S.E. (2d) 211 (1970).

in fee by a private landowner, Section 57-9-10 authorizes a court of competent jurisdiction to entertain a petition to abandon or close a street. By creating a formal judicial procedure for terminating a public right of way over land, this statute removes the uncertainty attending the common law of dedication and abandonment.[6] It also ameliorates the rigor of the common- law rule requiring strict proof of intent to abandon a public right of way before that right can be extinguished.[7] Under the statute, the controlling consideration is "the best interest of all concerned," not intent to abandon. Nothing in Section 57-9-20 suggests, however, that the court is given the power to create or destroy a fee simple interest in property.

Under Section 57-9-20, the court's authority to determine title to the land once it determines a street should be closed is an ancillary authority. It exists to remove uncertainty as to title and to provide repose for the holder of the fee simple interest. It is an authority to declare title according to law. It does not give the court naked power to divest the legal owner of title and vest it in another by judicial fiat. If the fee simple to a street is in the municipality, the court can only declare that fact; it cannot divest the fee.

---

[5] The Legislature is presumed to enact legislation with reference to existing law, and there is a strong presumption that it does not intend by statute to change common-law rules. *See Columbia Real Estate & Trust Co. v. Royal Exchange Assurance,* 132 S.C. 427, 128 S.E. 865 (1924). A statute is not to be construed as in derogation of common-law rights if another interpretation is reasonable. *See id.* Statutes in derogation of common law are to be construed strictly to preserve vested rights. *See Crowder v. Carroll,* 251 S.C. 192, 161 S.E. (2d) 235 (1968).

[6] The statute's standing requirement, for example, differs from the common-law rules. Under the common law, only abutting land owners or owners whose property was affected in some special or peculiar way different in degree or kind from that suffered by the general public could bring an action relating to dedicated property. *See Cason v. Gibson,* 217 S.C. 500, 61 S.E. (2d) 58 (1950); *Bethel Methodist Episcopal Church v. City of Greenville,* 211 S.C. 442, 45 S.E. (2d) 841 (1947). The statute, on the other hand, allows "[a]ny interested person" to petition a court to close or abandon a street. S.C. Code § 57-9-20.

[7] A right-of-way created by dedication may be lost by abandonment. *See Commissioners of the Streets of Georgetown v. Taylor, supra.* However, a mere misuser or nonuser does not constitute an abandonment of land dedicated to a public use. *City of Myrtle Beach v. Parker,* 260 S.C. 475, 197 S.E. (2d) 290 (1973). Abandonment must be proved by unequivocal acts showing a clear intent to abandon. *Id.* A use not inconsistent with the declared purpose of a dedication will not support a charge of abandonment. *Id.*

To avail herself of the street closing statute, Hoogenboom had the burden of proving that the fee simple interest remained in the private proprietor when the City laid out King Street or, in the alternative, that the City later conveyed the fee to the abutting owner. She did not prove either of these facts. That the city did not maintain The Extension as a street for a number of years preceding the commencement of her suit was immaterial if it had fee simple title as opposed to a mere right of way. As a matter of law, the holder of title to land is in legal possession regardless of actual physical possession. *See Lane v. Mims*, 221 S.C. 236, 70 S.E. (2d) 244 (1952) (title to the *locus in quo* draws to it possession); S.C. Code § 15-67-210 (1976). In short, Hoogenboom could not acquire decretal title to The Extension under Section 57-9-20

For the reasons stated, the judgment for Hoogenboom is

Reversed.

GARDNER and CURETON, JJ., concur.