## CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

Sights & Brightwaters
Investors, Ltd.

v.

Virginia Alcoholic Beverage
Control Board

January 29, 1998

Case No. (Chancery) 29669

BY JUDGE VERBENA M. ASKEW

This letter is in reference to an appeal from a decision of the Virginia ABC Board denying the petitioner's application for a beer on-premises license. For the reasons stated below, this Court upholds the Board's decision.

*Background*

Last March, Sights & Brightwaters Investors, Ltd. (Sights) agreed to purchase the assets of a restaurant located at 15764 Warwick Boulevard in Newport News. In that same month, Sights applied to the ABC Board for a beer on-premise license.

On April 15, 1997, while Sights was acting as manager of the premises, a patron named Jeffrey Cook entered the restaurant at approximately 8:00 p.m. He was there with two other friends, Gibbs and Moore. They remained there until approximately 11:00 or 11:30 p.m. According to Moore, Cook had consumed gin before arriving at the restaurant. While there, Cook and his friends consumed approximately five pitchers of beer at the restaurant. His companions stated that Cook was doing most of the drinking that night.

Later that evening, Cook and Moore got into an altercation involving Cook's ability to drive. Cook's keys passed hands from Moore, the

bouncer, and Gibbs before Cook eventually retrieved his keys. Outside the restaurant, Cook and Moore got into another fight. While they were fighting, a black male approached the two under the guise of breaking up the fight. The unidentified male's actual motive was to rob Cook. He managed to steal Cook's wallet from his pocket. Although the two pursued the thief, the thief's accomplices threatened to shoot the men. Cook went to retrieve a gun from his car. Soon after, the police arrived at the scene. Cook jumped into his car and sped out of the parking lot. An officer pursued the vehicle. Cook failed to negotiate a ninety-degree turn and was killed when he drove straight into the woods, striking a tree. As the officer approached the car, he could smell a strong odor of alcohol emitting from Cook. The decedent's BAC was determined to be .23 percent.

At the time of the incident, Sights had not obtained a beer on-premises license. The Board later denied its appeal on the grounds that "the applicant sold alcoholic beverages other than as permitted by the A.B.C. Act while the application was pending." (Final Decision and Order Refusing License, October 8, 1997.) The Board specifically refers to §§ 4.1-222(A)(1)(n), 4.1-302, and 4.1-304 of the Virginia Code. Sights appeals from this decision.

## Discussion

### I. Standard of Review

Under the Virginia Administrative Process Act, the court's scope of review is limited to a determination of whether "there was substantial evidence in the agency record to support the decision." *State Bd. of Health v. Godfrey*, 223 Va. 423, 433 S.E.2d 875 (1982); Code § 9-6.14:17. Proper judicial review must not be restricted to legal issues but must encompass " 'all . . . proofs' found within the entire record," each examined under the appropriate standard of review. *Environmental Defense Fund, Inc. v. Virginia State Water Control Bd.*, 15 Va. App. 271, 279, 422 S.E.2d 608 (1992); § 9-6.14:17. In its review of fact issues, "the court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Va. Code Ann. § 9-6.14:17.

## II. *Agency Abuse of Authority*

It is common practice in a court's review of an agency action to narrow its scope to the examination of two issues: (1) Whether the agency decision maker acted within the scope of his authority; (2) whether the agency had sufficient evidential support for its findings of fact. *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 242, 369 S.E.2d 1 (1988).

As to the first error of law, where an agency has authority by statute to make the type of decision it did and it was done within the statutory limits of its discretion, with the intent of the statute in mind, the agency has not committed an error of law as to this issue. *Id.*

The petitioner asserts that the Board improperly exercised its authority in refusing Sights' license. Sights argues that the Notice of Hearing provided by the A.B.C. Board was insufficient. Sights looks to the minutes of the Assistant Secretary which indicate the decision of the Board at the appeal hearing. The portions reads: "Upheld the hearing officer's decision to refuse the beer on-premises license-[l]icense at this location revoked due to 2 deaths & other problems." (Petition for Appeal, Exhibit B.) Sights argues that:

> despite providing notice and limiting the issue at the hearing to whether an illegal sale of alcoholic beverages to an intoxicated patron occurred, the Board substantiated the hearing officer's decision based upon "2 deaths and other problems" at the location, reasons wholly unrelated to the sale of alcoholic beverages to an intoxicated person.

(Emphasis added.)

Sights' argument cannot be supported by the record. The hearing was called to address two matters: the charges filed against Lollipop II, Inc., the first licensee of the premises, and to hear an objection to Sights' application. (Transcript of Hearing Officer Baynham, p. 5.) The minutes reveal two things: (1) the Board upheld the hearing officer's decision to refuse Sights' application and (2) the Board revoked the license at the location.

Sights did not have a license at this time that could be revoked. Therefore, it is clear that the Board was referring to the license held by Lollipop II, Inc. It was Lollipop II, Inc., who sold the assets of the business to Sights. It was Lollipop II, Inc., who was named as the licensee at this location in the Board's Report of Licensee Violation. The minutes indicated that it revoked the license at the location due to "2 deaths & other

problems." However, the decision as to Lollipop II's license is not before this Court for review.

As for the decision on Sights' application, the record supports the fact that the Board upheld the hearings officer's decision. It cannot be construed from the record that the "meeting minutes of the Board . . . unequivocally reveal that the Board did consider evidence of '2 deaths and other problems' to substantiate the hearing officer's decision on its application."

The evidence in the record indicates that the Board did not abuse the authority conferred upon it under the Alcoholic Beverage Control Act and other basic laws. Accordingly, the Court finds no merit in the petitioner's first assignment of error.

### III. *Substantial Evidence*

"The phrase 'substantial evidence' refers to such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Virginia Real Estate Comm'n v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123 (1983). This standard was designed with the intent to give "great stability and finality to the fact-findings of an administrative agency." *Id.* This Court may reject agency findings only if, upon considering the record in its entirety, "a reasonable mind would necessarily come to a different conclusion." *Id.*

The Board found that Sights violated several provisions of the title. Section 4.1-222(A)(1)(n) provides that "[t]he Board may refuse to grant any license if it has reasonable cause to believe that [t]he applicant . . . [i]s violating or allowing the violation of any provision of this title in his establishment at the time his application for a license is pending." The Board found that Sights violated provisions of this title while its license was pending because it sold alcoholic beverages without a license, in violation of § 4.1-302. Further, the Board found that Sights sold alcohol to a person who they knew or had reason to believe was intoxicated, thereby violating § 4.1-304.

The record reflects that while the waitresses stated that they could not tell Cook was intoxicated, one of his drinking companions indicated that Cook was "drunk." (Transcript, p. 5, Exhibits 2 & 3.) One of the waitresses stated that Cook had been acting like a "punk" throughout the evening and that he was "mouthy." (Transcript, Exhibit 2.) The men had been addressed by the bouncer for rowdiness earlier that evening.

An argument started in the bar because Cook's friends did not think Cook was in any condition to drive. Gibbs told the police that Cook gave the keys to Moore at one point because "[Cook] was saying that he wasn't sure whether or not he was able to drive or not." (Transcript, Exhibit 1.) Cook eventually retrieved his keys and drove out of the parking lot when the police arrived in response to the incident in the parking lot. Officer Price testified that Cook was driving in a "reckless manner" and failed to stay in his lane of travel. (Transcript, p. 22.) Cook's car jumped an incline as he crossed the railroad tracks. (Transcript p. 23.) While driving in excess of 65 m.p.h., Cook's car drove straight through a 90-degree turn in the road. (*Id.*) As the officer approached the car, he was able to detect "a very strong odor of alcohol" from Cook. (Transcript, p. 24.) The victim was later found to have a BAC of .23, far in excess of the legal limit.

Considering all of the record and the facts therein, this Court finds substantial evidence in the record to support the Board's decision. It is clear that reasonable minds could accept the relevant evidence as "adequate to support a conclusion." *Virginia Real Estate Comm'n. v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123 (1983).

Sights' argument that the Board's decision was arbitrary or capricious is not supported by the evidence. Having reviewed the Board's decision in the *Sportsman's Restaurant* case, the Court agrees with the Board in that the Sportsman's Lounge was already licensed and had no real problems before that time. The facts of that case cannot be applied here. Sights did not have a license when the incident occurred. The Court cannot reconcile the facts of these two matters and arrive at the conclusion that the Board's decision was "arbitrary or capricious."

As for the Board's reference to other charges concerning Sights' inability to demonstrate financial responsibility, there is no assignment of error as to this issue because the record reflects that this objection was withdrawn. Therefore, the Court will not review this matter on appeal.

Accordingly, this Court affirms the Board's decision.