606 S.E.2d 781

### SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION, Appellant,

v.

HINSON FAMILY HOLDINGS, LLC (formerly Hinson Family Limited Partnership, a South Carolina limited partnership) and Hinson Properties, Llc, a South Carolina limited liability company, Respondents.

No. 25911.

Supreme Court of South Carolina.

Heard Oct. 5, 2004.

Decided Dec. 13, 2004.

650

Clifford O. Koon, Paul D. de Holczer, and Mary Frances Gibson, all of Moses Koon & Brackett, of Columbia, for Appellant.

Howell V. Bellamy, Jr., and Robert S. Shelton, both of Bellamy, Rutenberg, Copeland, Epps, Graveley & Bowers, P.A., of Myrtle Beach, for Respondents.

Justice BURNETT:

This is an appeal in a condemnation case which has yet to be tried. The South Carolina Department of Transportation (DOT) appeals a circuit court order granting partial summary judgment to Respondents (Hinson). This appeal was transferred from the Court of Appeals pursuant to Rule 204, SCACR. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 1994, DOT exercised its right of eminent domain and filed a notice of condemnation and lis pendens to purchase 102 acres in Horry County from International Paper Realty Corp. (International Paper) for construction of new S.C. Highway 22, the Conway Bypass. The project included the new highway and relocation of a portion of the public Watertower Road, a logging road that had been maintained by the county and used by the public for years.

In March 1994, International Paper sold 160 acres to Apache Group II, an entity owned by Hinson. Apache Group II had notice of the anticipated condemnation proceeding involving Highway 22 and relocation of Watertower Road from the condemnation and lis pendens notices filed with the clerk

of court and a pre-sale survey of the property. Apache Group II subsequently conveyed the property to Hinson in 1999.[1]

In June 1994, DOT and International Paper settled the condemnation action. The settlement was based on a 1993 appraisal and included payment for a 25 percent diminution in the value of adjoining property owned by International Paper. The appraiser reduced the value of the adjoining property because Highway 22 (running north-south) would divide it, and access to the new highway and the relocated Watertower Road would be reduced.

A second appraiser hired by DOT in 1993 valued the acreage taken and the impact on remaining parcels, but did not specify any diminution in value due to a loss in right of access to public roads from the property at issue in the present case. In fact, the second appraiser stated no "uneconomic remnant" would exist after construction of Highway 22 and, although various parcels would be divided, "the remaining portions can be accessed from relocated [Watertower Road]." The acreage purchased by Hinson included the adjoining property for which DOT had compensated International Paper for diminished value because of reduced access to public roads.

In September 2000, DOT began condemnation proceedings to purchase approximately 88 acres of Hinson's property for construction of new S.C. Highway 31 (running east-west), the Carolina Bays Parkway, and an interchange with Highway 22. DOT informed appraiser John Wilkins that it had fully compensated the previous property owner (International Paper) in 1994 for loss of the right of access to public roads as a result of the condemnation action related to the construction of Highway 22. DOT took the position that Hinson had purchased the acreage from International Paper knowing it was without access to public roads.

Hinson's property lies on both sides of Highway 22: an eastern portion of 132 acres and a western portion of 28 acres. The highest and best use of the non-wetland acreage was as

---

1. The parties apparently agree this transfer has no impact on the analysis of this case because Apache Group II, Hinson Family Holdings, the former Hinson Family Limited Partnership, and Hinson Properties, LLC, are all owned and controlled by Keith Hinson. We will refer only to Hinson in this opinion for purposes of clarity.

residential resort property, which appraiser Wilkins valued at $13,000 per acre. Hinson's property is located near Barefoot Resort, a mixed-use residential community north of the Intra-coastal Waterway and east of Highway 22. The appraiser, accepting DOT's assertions, concluded the eastern portion of the property was landlocked before the taking and valued non-wetland portions of it at $1,300 per acre—a ninety percent reduction from the market value for non-landlocked property.

Hinson moved for partial summary judgment on the issue of whether the eastern portion of the property was landlocked. Hinson argued (1) DOT neither paid it nor International Paper for loss of all right of access to public roads, indicating DOT did not believe or try to assert the property was land-locked until realizing that position might allow it to pay less for Hinson's property in the 2000 condemnation action; and (2) the eastern portion was not landlocked when Hinson purchased it in 1994 or as of September 2000 because it bordered old Watertower Road which, while no longer main-tained by the county, had not been formally abandoned and was still publicly accessible. Hinson relied in its arguments on the 1993 appraisals and affidavits and correspondence from county, International Paper, and DOT officials involved in the previous condemnation action.

In response, DOT presented similar affidavits from five DOT officials or subcontractors who set forth the history of events related to the 1994 transactions and construction of Highway 22. The affiants stated Hinson had knowingly pur-chased a parcel of property landlocked by Highway 22 and the relocation of Watertower Road. The affiants and DOT further asserted that, as of September 2000, Hinson's acreage was landlocked because the parcel did not include a strip of land 100 feet wide that lies between the north end of the eastern portion of Hinson's land and the relocated Watertower Road. International Paper retained that strip of land in the 1994 transaction, but subsequently sold it to another entity. The appraiser also relied on the fact Hinson did not own the 100–foot strip in concluding the eastern portion was landlocked.

DOT contended that even if Hinson had access to old Watertower Road in 1994, Hinson did not have access when DOT filed notice of the condemnation action in September

2000 because the old road was closed and abandoned in late 1999 when the relocated road was opened. DOT argued there was a factual dispute on whether the eastern portion was landlocked, making summary judgment inappropriate.

The circuit court granted Hinson's motion for partial summary judgment, concluding Hinson's property was not made completely inaccessible by the 1993 condemnation action. Although DOT compensated International Paper for a 25 percent diminution in value due to reduced access, old Watertower Road never had been abandoned under the statutory process and so remained publicly accessible. "[I]t is clear to the Court the subject parcel enjoyed some access [to public roads] on the date the Highway 31 Condemnation Notice was filed" in September 2000, the circuit court stated.

## STANDARD OF REVIEW

A trial court may properly grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997). In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party. *Manning v. Quinn*, 294 S.C. 383, 365 S.E.2d 24 (1988). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the appellant, the non-moving party below. *Williams v. Chesterfield Lumber Co.*, 267 S.C. 607, 230 S.E.2d 447 (1976).

## ISSUE

Did the circuit court err in granting Hinson's motion for partial summary judgment because a genuine factual dispute exists on whether old Watertower Road has been formally abandoned?

## LAW AND ANALYSIS

■ DOT contends the circuit court erred because this case presents a genuine issue of material fact: whether Horry County abandoned the portion of old Watertower Road which abutted Hinson's property when the road was relocated in late 1999 during construction of Highway 22. We disagree.[2]

S.C.Code Ann. § 57-9-10 provides, "any interested person, the State or any of its political subdivisions or agencies may petition a court of competent jurisdiction to abandon or close any street, road or highway whether opened or not." Notice must be given to the public by newspaper advertisements and to abutting landowners by mail. Section 57-9-10. The court must determine if it is in the best interest of all concerned to abandon or close the street, and determine in whom the title to property comprising the former street shall be vested. S.C.Code Ann. § 57-9-20 (1991).

■ "By creating a formal judicial procedure for terminating a public right of way over land, [Section 57-9-10] removes the uncertainty attending the common law of dedication and abandonment. It also ameliorates the rigor of the common law rule requiring strict proof of intent to abandon a public right of way before that right can be extinguished." *Hoogenboom v. City of Beaufort,* 315 S.C. 306, 319, 433 S.E.2d 875, 884 (Ct.App.1992). DOT and the local municipality are indispensable parties that must be joined in an action to abandon a public road. Without their inclusion, they would not be bound by the decision or discharged from their maintenance duties or other obligations and liabilities. *BancOhio Natl. Bank v. Neville,* 310 S.C. 323, 426 S.E.2d 773 (1993).

Watertower Road is an admittedly public road, although the record does not reveal whether it became public by dedication or through prescriptive or long-established use. It is undisputed that no interested person has instituted an action under the statutory process to effect an abandonment of old Water-

---

2. DOT in its brief argues the circuit court should have applied S.C.Code Ann. § 57-5-80 (Supp.2003), which addresses the removal of highways from the state highway secondary system of roads. This argument was withdrawn at oral argument because counsel for DOT acknowledged having mistakenly believed Watertower Road was part of the state's secondary system.

tower Road. Moreover, an affidavit and letter from an Horry County official show the county had ceased maintaining, but had not abandoned, the portion of old Watertower Road abutting Hinson's property. In light of these facts, conclusory assertions by DOT's affiants regarding the allegedly landlocked nature of Hinson's property are insufficient to create a genuine issue of material fact. The circuit court correctly concluded old Watertower Road remains publicly accessible because no formal action has been instituted to abandon it pursuant to Sections 57–9–10 and –20.

## CONCLUSION

We affirm the circuit court's ruling old Watertower Road remains publicly accessible. Accordingly, as a matter of law, Hinson's property was not landlocked as a result of the 1994 condemnation action or the relocation of Watertower Road in 1999. We remand this case for further proceedings consistent with this opinion.

We decline to address the additional sustaining ground raised by Respondents regarding the propriety of an implied, appurtenant easement by necessity. *See Whiteside v. Cherokee County School Dist. No. One*, 311 S.C. 335, 428 S.E.2d 886 (1993) (appellate court need not address remaining issue when resolution of prior issue is dispositive).

**AFFIRMED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.