19066

CITY OF GREENVILLE, South Carolina, and The Peoples National Bank, Greenville, South Carolina, Plaintiffs-Respondents, v. Bill B. BOZEMAN, Individually and as Trustee *et al.*, Defendants-Appellants.

(175 S. E. (2d) 211)

*Messrs. Pyle & Pyle* and *Jack L. Bloom,* of Greenville, *for Appellant, Milton Trotter,*

*Messrs. W. H. Arnold,* of Greenville, *for Respondent, The City of Greenville,* and *Leatherwood, Walker, Todd & Mann,* of Greenville, *for Respondent, The Peoples National Bank, Greenville, South Carolina,*

June 15, 1970.

*Per Curiam.*

The appeal in this action for declaratory judgment challenges the conclusion of the circuit court that the action taken by the City of Greenville to close portions of certain streets in the city is lawful and effective, and challenges the court's conclusion that title to the land in that portion of. Laurens Street being vacated (the western one-half thereof) shall vest exclusively in the property owners abutting on the western side of the street. After careful consideration of the entire record in the light of the briefs and argument of counsel, we are satisfied that these issues were correctly decided by the circuit court. Let the order appealed from be printed as the judgment of the court.

The Order of Judge Eppes follows:

This action was instituted by. the Plaintiffs, the City of Greenville, South Carolina, hereinafter sometimes referred

to as the City, and The Peoples National Bank, Greenville, South Carolina, hereinafter sometimes referred to as the Bank, seeking a declaratory judgment with respect to an agreement entered into on August 19, 1969, between the City and the Bank, which agreement provides for the redevelopment of a certain three block area in downtown Greenville, including the closing of portions of certain public streets. The plaintiffs in this action are also seeking a declaration concerning the validity of the closing of the streets and the rights of the various abutting property owners thereon.

The parties named as Defendants, with the exception of the Defendant, Milton Trotter, are the persons who own or owned interests in property either within the project area or abutting on a street within the project area at the time of the commencement of this action and the filing of the Notice of Pendency of Action. The Defendant, Milton Trotter, owns property not contiguous to the property area and has been named as a party, individually and as representing the class of other non-contiguous property owners. It appears from the acceptances and affidavits of service and publication, and I so find, that all of the Defendants have been properly served and made parties to this action. A substantial number of the Defendants are represented by attorneys who have filed answers in their behalf. All of the minor Defendants and all Defendants under any other legal disability who did not individually secure the appointment of guardian *ad litem* are represented by Jack Bloom, Esquire, an experienced and competent member of the Greenville Bar, who was duly and properly appointed as their guardian *ad litem.*

A hearing was held before me on December 18, 1969, attended by counsel of record and by the guardian *ad litem,* at which time the parties presented testimony and other evidence in support of their respective positions. There also was presented certain stipulations by the parties which are hereinafter referred to in more detail.

After due consideration of the pleadings, the testimony and the other evidence, I find that this is a proper action for a declaratory judgment under the "Uniform Declaratory Judgment Act", Chapter 24, Title 10, of the South Carolina Code of Laws (1962). I also find that this Court has jurisdiction over the subject matters and over all of the Defendants herein named.

It is quite apparent from the testimony and the evidence that the agreement between the City and the Bank was entered into after very extensive and thorough investigations and studies on the part of both parties. The agreement has been identified and offered in evidence. Briefly, it provides for the redevelopment of a three block area in downtown Greenville (said area being bounded generally on the north by the south right-of-way line of West North Street, on the south by the north right-of-way line of West Washington Street; on the west by the west right-of-way line of Richardson Street; on the east by the center line of North Laurens Street), including the area of the rights-of-way of Buncombe Street and Coffee Street between Richardson Street and the center line of North Laurens Street, and the area of the rights-of-way of Buncombe Street and Coffee Street between the center line of North Laurens Street and the west right-of-way line of North Main Street.

The principal components of the project include (a) the construction by the City of an offstreet parking facility having a capacity for approximately 700 vehicles, which parking facility will be located on land to be acquired by the City and will involve the vacation of Buncombe Street between Richardson Street and Laurens Street; (b) the construction by the Bank of a high-rise bank-office building which will be located immediately south of the City's off-street parking facility on land owned or leased by private enterprise as well as on the vacated portion of Coffee Street between Richardson Street and Laurens Street; (c) the construction by the Bank of a parking structure which will occommodate ap-

proximately 275 vehicles and will provide a number of retail shop facilities, this structure to be located on property owned or leased by private enterprise; (d) the acquisition by the City of an additional right-of-way along the east side of North Richardson Street for the widening and reconstruction of North Richardson Street from West Washington Street to West North Street, the portion of said additional right-of-way from Washington Street to Coffee Street to be furnished by said Bank; (e) the vacation of the Western one-half of North Laurens Street from West Washington Street to West North Street and the development of the remaining Eastern one-half of North Laurens Street as a limited right-of-way for emergency and service vehicles to the abutting structures; and (f) the development of that portion of West Coffee Street and Buncombe Street between the Eastern right-of-way of North Laurens Street and the Western right-of-way of North Main Street as a pedestrian mall or esplanade, retaining the public right-of-way primarily for pedestrian use, except for service vehicles and usage by emergency vehicles. It appears from the record without contradiction and I find that the plan accords in all respects with the plans and recommendations of the various professional municipal planning consultants employed by the City of Greenville, the Greenville County Planning Commission and the Total Development Committee of the Greater Greenville Chamber of Commerce, all of which plans and recommendations pertain to the total development of the City of Greenville.

I find that the City entered into the agreement after a full public hearing and after due consideration of all surrounding facts and circumstances based upon the findings set forth in resolutions of the Greenville City Council adopted at a special meeting held on August 19, 1969. The Court does not feel that it is necessary to set forth in detail herein all of the findings made by the City Council with respect to the agreement between the Bank and the City, but the Court feels that the following excerpt from the resolutions adequately sums up these findings:

\* \* \* it is the finding of City Council, pursuant to thorough and detailed investigation and deliberation and after a full public hearing, that the undertaking and completion of the proposed project by the City, in cooperation with the Peoples National Bank, is necessary in the public interest to improve and strengthen downtown economy, to provide necessary downtown traffic flow and circulation and to provide needed office and retail shop facilities, that this proposed project will also provide greater tax revenues for the City of Greenville, all of which will greatly improve the general welfare of the surrounding area and will be for the improvement and convenience of the entire City, all in accordance with the plans and recommendations heretofore submitted by Hammer, Siler and Greene Associates, Professional Municipal Planning Consultants, and adopted by the Mayor and City Council of the City, the Greenville County Planning Commission, the Total Development Committee of Greater Greenville Chamber of Commerce, and the State Highway Commission in the Greenville Area Transportation Plan (GRATS).

It is the opinion of the Court that the findings made by the City Council with respect to the necessity, desirability and feasibility of the proposed project are amply supported by the affirmative, clear and uncontradicted evidence in this case.

The Court also finds that after the City and the Bank entered into the agreement and in accordance therewith, the City Council took the necessary action to provide for the closing and vacating of those portions of the public streets involved in the project. The evidence indicates that in this regard the City Council on August 19, 1969, adopted the following resolutions.

And be it further Resolved that the Greenville City Council, after a full public hearing and after due consideration of all surrounding facts and circumstances, and in accordance with the studies and recommendations of its profes-

sional consultant, Harland Bartholomew and Associates, finds, for the reasons set forth above, that it will be to the best interest of the entire City and that it will be necessary for the convenience and improvement of the City of Greenville to close and vacate certain portions of the public streets pursuant to the terms and provisions of the aforesaid project agreement between the City of Greenville and The Peoples National Bank and the Greenville City Council, by authority granted under Section 47-1327 of the South Carolina Code of Laws (1962), does hereby declare that those certain streets located within the limits of the City of Greenville and hereafter described shall be closed and vacated as follows:

(a) All that certain portion of West Coffee Street between the new eastern right-of-way line of N. Richardson Street and the new western right-of-way line of N. Laurens Street;

(b) All that certain portion of Buncombe Street between the new eastern right-of-way line of N. Richardson Street and the new western right-of-way line of N. Laurens Street;

(c) All that certain portion of N. Laurens Street being approximately western one-half of N. Laurens Street (from the western right-of-way line to the center line) between the northern right-of-way line of W. Washington Street and the southern right-of-way line of W. North Street;

And the closing and vacating of the aforesaid streets shall be and become effective on the day and at the time of the delivery of a deed by the Peoples National Bank, Greenville, South Carolina, to the City of Greenville, conveying a strip of land approximately 30 feet in width for the purpose of widening N. Richardson Street along the eastern side of N. Richardson Street between W. Washington Street and W. Coffee Street, said conveyance to be in accordance with and pursuant to the terms and provisions of the aforesaid project agreement between the City of Greenville and the Peoples National Bank.

And be it further Resolved that immediately upon the closing and vacating of said streets becoming effetcive as set

forth in the preceding paragraph of this resolution, the fee simple title to the vacated portion of W. Coffee Street and Buncombe Street shall vest in the abutting property owners to the center of said streets, and the fee simple absolute title to the vacated portion of N. Laurens Street (from the western right-of-way line to the center of said street), shall vest in the abutting property owners along the western side of N. Laurens Street.

The Plaintiffs, in their Complaint, have alleged that in order to proceed with the development of the project and the construction of the high-rise bank-office building, the bank parking building and the municipal parking building, it is necessary to close and vacate the above described portions of Coffee Street, Buncombe Street and Laurens Street. The Plaintiffs have, therefore, requested the Court to declare that the action taken by the City Council of the City of Greenville is valid and does effectively provide for the closing and vacating of the portions of the streets in question.

Unquestionably the City has this authority under Section 47-1327 of the 1962 S. C. Code if it has proceeded properly and the facts so warrant.

The cases of *Bethel M. E. Church v. City of Greenville,* 211 S. C. 442, 45 S. E. (2d) 841 (1947), *City of Rock Hill et al. v. Cothran et al.,* 209 S. C. 357, 40 S. E. (2d) 239 (1946) and *Cherry v. Rock Hill,* 26 S. E. 798, 48 S. C. 553 (1897) have been called to my attention by the parties. In the *Bethel* case, the Court reversed the holding in favor of the City of Greenville in attempting to close a part of Bethel Street. The facts in the present case are entirely different from the facts in that case. In the present case, the City has shown through various studies and the opinions of professionals, which are reflected by exhibits in the record that a most thorough and careful appraisal of the entire situation was before the City Council. As held by our Supreme Court in the *Bethel Church* case, *supra,* the Courts will not interfere with the exercise of

discretionary powers by a municipal body except in cases of fraud or clear abuse of power, citing *Grady v. City of Greenville,* 129 S. C. 89, 123 S. E. 494.

The Court in *Bethel* pointed out that the City of Greenville made no showing that the public interest would be subserved by closing a part of Bethel Street and no reasons were assigned for the closing.

I find that exactly the opposite appears in the present case because the City desires to upgrade what has been referred to as the "downtown" part of the City. The primary objective of the City is to erect a parking building which will serve the public generally and afford the public convenient parking and easy access to the "downtown" part of Greenville, and, in addition, will benefit the merchants of the "downtown" part of Greenville. As heretofore stated in this order, studies have been made by professional planners such as Hammer, Siler and Greene Associates, Harland Bartholomew and Associates, who have been employed by the City of Greenville over a period of years in connection with its traffic problems, and, in addition, the plan has been approved by the Total Development Committee of the Greater Greenville Chamber of Commerce, the State Highway Commission and the Greenville Area Transportation Plan, all of these firms or organizations have made a study and recommend the adoption of the plan. In addition, the record shows conclusively that the City Council of the City of Greenville has held public hearings whereby the Citizens were given an opportunity to be heard both pro and con and the approval of the plan has been unanimous.

I find that the City Council has acted honestly and not hastily but with due deliberation and after consultation with experts in the field and with almost the wholehearted support of the citizens of the City of Greenville.

Our Supreme Court in the case of *Rock Hill v. Cothran, supra,* recognizes that a municipality cannot vacate a street or a part thereof for the sole purpose of benefitting an abut-

ting owner and that the City cannot act arbitrarily but must act with due regard to the interest and convenience of the public or individual rights. The mere fact that the vacation was instigated by a private corporation does not itself invalidate the vacation nor constitute such fraud or abuse of discretion as will authorize a Court of Equity to interfere. Here the purported project is a joint project between the City and the Bank. I have found no selfishness on the part of the Bank in this case, but on the contrary, I find that the proposed project is a joint venture, so to speak, between the City of Greenville and the Bank which will inure to the benefit of both and by benefitting the City it will benefit its citizens.

I find further that the mode of travel has changed greatly since the City of Greenville was originally laid out more than 100 years ago, and in order to upgrade the "downtown" part of Greenville, it is necessary that convenient and readily accessible parking for motor vehicles be furnished. It is a matter of common knowledge that many, if not most, of the cities in our country are today experiencing a decline or deterioration in their "main street" or business sections. The tendency is to move out to shopping centers on the outskirts of cities. If the "downtown" or "main street" section of the City of Greenville is to be maintained, a revitalization program such as is here proposed must be inaugurated by private capital or by public funds. Here, the plan is for private capital to join hands with public funds. To me, this is commendable and I find that the closing of the streets which the Plaintiff seeks to close is for the best interests of the citizens of the City of Greenville and that the procedure followed by the City is adequate and proper in every respect.

The only party who has asserted any opposition to the closing of the streets is the Defendant, Milton Trotter, who owns property located west of the three-block area in question. This Defendant also represents the

class of other property owners who own property not con-
tiguous with the redevelopment area, but who may be af-
fected by the project. The Defendant, Trotter, owns property
located at the northwest corner of Richardson Street and
West Coffee Street and it is his contention that if Coffee
Street is closed between Richardson and Laurens, he will no
longer be able to have direct access to Main Street by way
of Coffee Street, but that he and his customers will be
inconvenienced by having to travel a more circuitous route
in getting to and from Main Street. Although there may be
some inconvenience involved to certain persons, and partic-
ularly persons who own property west of the project, in not
being able to go directly to Main Street by traveling east
on Coffee Street, this inconvenience seems insignificant and
certainly outweighed by the advantages which would accrue
to the City and to the public generally by closing the portions
of the streets in question in order to implement the develop-
ment of the project. The widening of Richardson Street and
the benefits to be derived from the additional parking facili-
ties and other components of the project will substantially
increase the value of the property owned by the Defendant
Trotter, as well as other non-contiguous property owners in
the immediate vicinity. The Court is of the opinion that any
such inconvenience to these non-contiguous property owners
is insufficient to outweigh or offset the advantages which
would be derived by the public generally by the closing of
these streets. The Court, therefore, finds that the action taken
by the City Council, as provided in its resolutions, in closing
the portions of Coffee Street, Buncombe Street and North
Laurens Street is proper and valid and does effectively pro-
vide for the closing and vacating of the said portions of said
streets.

With respect to the rights and ownership in and to
the streets in question, the rule which is generally
accepted and which is followed in South Carolina is
that in the absence of some statutory disposition, abandon-
ment or vacation of a public street vests absolute possession

and title in the abutting property owners and not the original owner, at least unless the original owner is the abutting owner at the time of the vacation, or has specifically reserved the right of reversion on vacation. *S. C. State Highway Dept. v. Allison,* 246 S. C. 389, 143 S. E. (2d) 800; *City of Rock Hill v. Cothran,* 209 S. C. 357, 40 S. E. (2d) 239; 39 Am. Jur. (2d), Highways, Streets and Bridges, § 184, p. 561. There is no evidence in the record to the effect that the original owner has specifically reserved the right of reservation on vacation. It is, therefore, the opinion of this Court and I so hold that the rule stated above is applicable to the streets in question and that the vacated portions of said streets shall be vested in the abutting property owners to the center lines of said streets, at the time said streets are actually vacated, as follows:

(a) The land in the southern one-half of that portion of Coffee Street being vacated shall vest in the property owners abutting thereon;

(b) The land in the northern one-half of that portion of Coffee Street being vacated shall vest in the property owners abutting thereon;

(c) The land in the southern one-half of that portion of Buncombe Street being vacated shall vest in the property owners abutting thereon;

(d) The land in the northern one-half of that portion of Buncombe Street being vacated shall vest in the property owners abutting thereon; and

(e) The land in that portion of Laurens Street (*i. e.,* the western one-half of said street from West Washington Street to West North Street) shall vest in the property owners abutting thereon.

The Court is aware that the closing of the western one-half of Laurens Street creates something of an unusual situation with regard to the rights of the property owners abutting on the eastern side of said street. Presumably, under the rule of law stated above and the legal

theory from which it is derived, the abutting property owners on the eastern side of the street would not be entitled to claim any rights of ownership in the western one-half of the street which is to be vacated. By the same token, the abutting property owners on the western side would not be entitled to claim any rights of ownership in the present eastern one-half of Laurens Street in the event any part of the present eastern one-half of that street should be vacated in the future. Both of the Plaintiffs have entered into a written stipulation (Plaintiff's Exhibit 2) with certain of the Defendants who own property abutting on the eastern side of Laurens Street which provides that in the event any or all of the present eastern one-half of Laurens Street between West Washington Street and West Coffee Street be closed or vacated at any future date, then the entire part thereof would vest solely in those property owners abutting on the eastern side thereto to the exclusion of any property owners abutting on the western side. These parties have also stipulated and agreed that the property owners abutting on the eastern side of Laurens Street are entitled to have the present eastern one-half of Laurens Street and the portion of Coffee Street between Laurens and Main remain open and maintained by the City to provide access to the abutting property on the eastern side of Laurens Street for at least the use of limited vehicular traffic such as emergency, service and delivery vehicles; and in the event of any future alteration of these portions of said streets so as to deny access to the property on the western side for at least the limited uses stated above, the abutting property owners on the eastern side of Laurens Street who are denied such access shall have leave to claim and recover from the City the amount of the damages, if any, sustained by them as a result of such alterations. The Court is of the opinion that these stipulations and agreements are equitable and fair to all parties concerned and thereby confirms such stipulations as herein stated.

As to the effect of the closing of the streets on the market value of property located in the project area which will be

acquired by the City for the purposes of constructing the municipal offstreet parking facility, it appears from the testimony and other evidence that the City has agreed that it will not contend that the value of such properties has been depreciated because of the closing or pending closing of the streets. The City has agreed that in determining the fair market value of such property for the purpose of acquisition of the property by the City either through negotiation, or, if unsuccessful by this method, by condemnation, the City will recognize that just compensation for the property will be based on the fair market value of the property as it now exists with the streets open and in full use, and the City will not in any manner attempt to depreciate the value of such properties because of the fact that the streets in question have been closed or may be closed. The Court feels that the position stated by the City, contained in the evidence and set forth above, is proper and correct and, therefore, confirms this position and orders that the City follow it in connection with any acquisition of property in the project area.

The Court finds that the action taken by the Greenville City Council in the resolution adopted on August 19, 1969, providing for the closing and vacating of certain portions of Coffee Street, Buncombe Street and Laurens Street hereinabove described, is valid and binding in all respects; and that immediately upon said streets being closed and vacated in the manner provided in said resolution of the Greenville City Council, the fee title to the land in the vacated portions of said streets shall immediately be vested in the abutting property owners to the center lines of said streets, to-wit:

(a) The land in the southern one-half of that portion of Coffee Street being vacated shall vest in the property owners abutting thereon;

(b) The land in the northern one-half of that portion of Coffee Street being vacated shall vest in the property owners abutting thereon;

(c) The land in the southern one-half of that portion of Buncombe Street being vacated shall vest in the property owners abutting thereon;

(d) The land in the northern one-half of that portion of Buncombe Street being vacated shall vest in the property owners abutting thereon; and

(e) The land in that portion of Laurens Street (*i. e.,* the western one-half of said street from West Washington Street to West North Street) shall vest in the property owners abutting thereon.

The Court finds that the agreement stipulated between the Plaintiffs and those Defendants who own property abutting on the eastern side of Laurens Street between Washington Street and Coffee Street should be confirmed and made binding upon said parties, their respective successors, heirs and assigns.

It is ordered that the relief sought by the Plaintiffs in their Complaint be granted in conformity with the terms of this Order.

And it is so ordered.