THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED 
 ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR. 
 
THE STATE OF SOUTH CAROLINA
 In The Court of Appeals

 
 
 
 
 Keowee Investment Group, LLC and the Cliffs at Keowee Vineyards Community 
 Association, Inc., Petitioners, Respondents,
 
 
 

v.
 
 
 
 
 Pickens County, the South Carolina Department of Transportation, also 
 all other persons unknown claiming any right, title, interest in or 
 lien upon the real estate described herein as a portion of Cleo Chapman 
 Highway; unknown adults as being as a class designated as John Doe; 
 unknown infants, persons under disability or in a military service being 
 as a class designated as Richard Roe, Earnest W. Cooler, Jr., Dot Robertson 
 and Roger D. Gravely,
 Of Whom South Carolina Department of Transportation is, Respondent,
 and Dot Robertson, Roger D. Gravely and Will Gravely, (as a member 
 of the class of persons designated as John Doe or Richard Roe) are, 
 Appellants.
 
 
 

Appeal From Pickens County
  Joseph J. Watson , Circuit Court Judge

Unpublished Opinion No. 2004-UP-459
 Heard May 13, 2004  Filed August 30, 2004

AFFIRMED

 
 
 
 
 John S. Nichols, of Columbia; for Appellants.
 Beacham O. Brooker, Jr., of Columbia; David H. Wilkins, and Timothy 
 E. Madden, of Greenville; for Respondents.
 
 
 

PER CURIAM:  Keowee Investment Group, LLC 
 (Developer) and the Cliffs at Keowee Vineyards Community Association, Inc. (the 
 Association), commenced this action pursuant to S.C. Code Ann. section 57-9-10 
 (1991), seeking to close a highway that adjoined property in the Cliffs at Keowee 
 Vineyards subdivision.  The trial court found closing the road was in the best 
 interest of all concerned, determined the Developer and the Association should 
 have title to the road, and required access must remain open to all interested 
 in visiting McKinney Chapel.  We affirm.
FACTS
Developer owned 1,200 acres of land in Pickens County that it developed into 
 the Cliffs at Keowee Vineyard subdivision.  The Association is an association 
 of the property owners within the subdivision, and it owns and maintains all 
 the roads and common areas within the subdivision.  The subdivision abuts a 
 portion of a public road known as Cleo Chapman Highway (the highway).  McKinney 
 Chapel and cemetery is at the end of the highway.  McKinney Chapel is at least 
 one hundred years old, and the historic church is maintained by Grace United 
 Methodist Church (Grace UMC).  Services are held at McKinney Chapel on a monthly 
 basis and for special events.    
Concerned about security, Developer and the Association 
 (collectively, Respondents) sought to close 14,000 feet of the highway that 
 is located within the boundaries of the subdivision.  They brought this action 
 to close the highway against Pickens County, the South Carolina Department of 
 Transportation, and a class of unknown persons who may claim some interest in 
 the highway, pursuant to section 57-9-10.  The private roads of the subdivision 
 connect to the highway within the portion they sought to close.  Several other 
 landowners, who owned property adjacent to the highway but were not within the 
 subdivision, also supported the privatization of the highway.  
Dot Robertson, Roger D. Gravely and Will Gravely 
 (collectively referred to as Appellants) intervened as members of the class 
 of persons designated as John Doe or Richard Roe in order to keep the highway 
 open to the public for access to the historic chapel and cemetery.   
Shortly after petitioning to close the highway, 
 Developer and Grace UMC reached an agreement regarding public access to the 
 chapel and cemetery if the highway were closed.  The agreement: granted Respondents 
 the right to construct a security gate to control access to the highway; granted 
 visitors and guests to the chapel and cemetery a nonexclusive perpetual easement 
 over the highway; and provided that Developer would maintain the chapel and 
 cemetery grounds.  The agreement also provided that visitors could access the 
 chapel and cemetery at any time and on any day by informing the guard at the 
 security gate of their destination; there would be no registration requirement.  

Just prior to the filing of the petition, Pickens County passed a resolution 
 calling for access to the chapel.  It provided:
 
 NOW, THEREFORE, BE IT RESOLVED THAT Pickens County is opposed to the gating 
 for private development of all state roads and of county arterial and collector 
 roads.  Where public roads are closed, provision must be made to allow public 
 access to significant cultural and natural resources that have traditionally 
 been provided to residents of Pickens County.
 BE IT FURTHER RESOLVED that Pickens County requests that any access agreement 
 for Cleo Chapman Highway be irreversible and subject to periodic review to 
 assure that access provisions are maintained in good faith.  

Pickens County Res. No. 01-15.    
At trial, Respondents provided evidence of vandalism 
 and other crimes that have occurred along the portion of the highway they sought 
 to close.  They detailed the litter problems resulting from people traveling 
 the highway.  Respondents provided evidence of another development in which 
 they were successfully allowing access to an active church down a closed road 
 behind the developments security gate.  
Many of the other landowners who own property adjacent 
 to the closed portion of the highway testified regarding the impact on their 
 property.  Several echoed the sentiment that the gate would decrease vandalism, 
 crime, and litter.  They further testified that their property values would 
 be enhanced by the addition of the gate.  
Appellants appeared pro se at the 
 hearing.  They testified that closing the highway would unnecessarily restrict 
 access to the chapel.  They provided testimony from individuals who would feel 
 uneasy having to go through the gate in order to access the chapel.  Appellants 
 presented a petition signed by 4,000 individuals opposed to closing the highway 
 because it might inhibit public access to the chapel.  
The trial court recognized the importance of maintaining 
 public access to the chapel and cemetery.  The court found the agreement allowed 
 access to the chapel, did not unnecessarily restrict the movements of those 
 seeking to visit, and was not contrary to the Pickens County resolution.  The 
 agreement was incorporated into the final order such that if Respondents violated 
 the terms, it would be a violation of the order.  
In determining whether to close the highway, the 
 trial court considered the petition opposing the closing signed by 4,000 local 
 residents.  However, the court found the residents signing the petition were 
 not aware that they would be given permanent access to the chapel.  The court 
 also found the closing of the highway pursuant to the terms of the agreement 
 would be in the best interest of all concerned.  The court determined the security 
 of the area would be enhanced and the property owners in the area would not 
 be adversely affected.  Finally, the court found that title to the highway would 
 be vested in Respondents.  
Appellants filed a pro se post-trial petition for reconsideration.  
 The trial court held the petition was fatally flawed because it was not served 
 upon the DOT and affirmed its prior findings on the merits.  This appeal followed.
STANDARD OF REVIEW
The parties dispute whether a legal or equitable standard of review should 
 be applied.  Our supreme court has analyzed a trial courts decision to close 
 a road pursuant to statute under an abuse of discretion standard.  First 
 Baptist Church of Mauldin v. City of Mauldin, 308 S.C. 226, 229, 417 S.E.2d 
 592, 594 (1992) (finding that in light of the evidence in the record supporting 
 the road closing, the trial court properly considered the publics interest 
 as required by statute and no abuse of discretion occurred).  An abuse of discretion 
 occurs when a trial courts decision is unsupported by the evidence or controlled 
 by an error of law.  Ledford v. Pa. Life Ins. Co., 267 S.C. 671, 675, 
 230 S.E.2d 900, 902 (1976).  Accordingly, we will reverse the courts decision 
 to close the highway only if the decision is unsupported by the evidence.  
LAW/ANALYSIS

 
I.  Subject Matter Jurisdiction
Appellants argue the trial court erred in: (1) ruling that their post-trial 
 motion for reconsideration was fatally flawed because it was not served upon 
 the DOT; and (2) making this ruling sua sponte.  Respondents assert that 
 because Appellants failed to serve the DOT, their post-trial motion did not 
 toll the time period for filing their notice of appeal, and, thus, this court 
 does not have subject matter jurisdiction to entertain the appeal.  
In order to perfect an appeal to this court, a party must serve the notice 
 of appeal on all parties within thirty days of receipt of the written notice 
 of final order or judgment.  Rule 203(b)(1), SCACR.  When a party files a timely 
 post-trial motion for judgment notwithstanding the verdict (j.n.o.v.) pursuant 
 to Rule 50(b), SCRCP, to alter or amend the judgment pursuant to Rules 52 and 
 59, SCRCP, or for a new trial pursuant to Rule 59, SCRCP, the time period for 
 filing the notice of appeal is tolled until receipt of written notice of the 
 order granting or denying the post-trial motion.  Id.  The timely service 
 of the notice of appeal is a jurisdictional requirement, and the appellate courts 
 have no authority to extend or expand the time in which the notice of appeal 
 must be served.  Mears v. Mears, 287 S.C. 168, 169, 337 S.E.2d 206, 
 207 (1985) (interpreting former Supreme Court Rule 1, §§ 1 A and 1 C).  The 
 failure to timely serve the notice of appeal divests this court of subject 
 matter jurisdiction and results in dismissal of the appeal.  Canal Ins. 
 Co. v. Caldwell, 338 S.C. 1, 5, 524 S.E.2d 416, 418 (Ct. App. 1999).
In the present case, Appellants intervened as defendants in Respondents suit 
 against Pickens County, the DOT, and other unknown persons claiming some right 
 or interest in the particular section of the highway they sought to close.  
 Although named as a defendant in the action, the DOT filed an answer expressing 
 that it had no objection to the closing of that section of the highway.  After 
 answering the complaint, the DOT notified Respondents counsel that it would 
 not appear at the hearing, and DOT did not appear further in the action.  Appellants 
 timely filed their pro se motion for reconsideration pursuant 
 to Rules 52(b) and 59(a) and (e), SCRCP.   However, Appellants failed to serve 
 their co-defendant, the DOT, with the motion. 
In ruling on the post-trial motion, the trial court 
 noted that Rule 5, SCRCP, requires that every written motion must be served 
 on all parties not in default.  Rule 5, SCRCP (Every . . . written motion . 
 . . shall be served upon each of the parties; but no service need be made on 
 parties in default for failure to appear. . . .).  The court found, sua 
 sponte, that Appellants failure to serve the DOT with the post-trial motion 
 pursuant to Rule 5 was a fatal error that rendered Appellants post-trial 
 motion untimely and of no effect.  The court alternatively denied Appellants 
 post-trial motion on the merits.  Appellants filed their notice of appeal within 
 thirty days after receiving written notice of the order denying their motion 
 for reconsideration.   
Regardless of whether the trial court erred in ruling on this issue sua 
 sponte, we find the court erred in its interpretation of the effect of Rule 
 5, SCRCP.  Although Rule 5 does require service of motions on all parties to 
 an action, nothing in the rule indicates that failure to serve all parties is 
 a jurisdictional requirement, rendering the motion of no effect, or as if 
 it had never been filed.  The trial court still had jurisdiction to hear post-trial 
 motions timely filed in the case.  See Farmer v. Monsanto Corp., 
 353 S.C. 553, 557, 579 S.E.2d 325, 327 (2003) (Subject matter jurisdiction 
 is the power to hear and determine cases of the general class to which the proceedings 
 in question belong.) (citing Dove v. Gold Kist, Inc., 314 S.C. 235, 
 237-238, 442 S.E.2d 598, 600 (1994)); see also State v. Brown, 
 358 S.C. 382, 387, 596 S.E.2d 39, 41 (2004) (holding that where a defendant 
 failed to file his notice of appeal within ten days of his magistrate court 
 conviction, the failure to comply with the procedural requirements divested 
 the circuit court of appellate jurisdiction, not the subject matter jurisdiction 
 to hear and determine that class of appeal).  
Clearly, failure to serve a particular party with 
 a motion or order adverse to that partys rights would render it ineffective 
 against that party.  See, e.g., Connor v. City of Forest Acres, 
 348 S.C. 454, 461-62, 560 S.E.2d 606, 609-10 (2002) (noting that service of 
 the notice of intent to appeal is a jurisdictional requirement, and the failure 
 to serve particular parties meant they were not part of the appeal); Universal 
 Benefits, Inc. v. McKinney, 349 S.C. 179, 183, 561 S.E.2d 659, 661 (Ct. 
 App. 2002) (noting that judgments should not be issued without notice to a party 
 whose rights are affected, the court stated that a person against whom a judgment 
 or order is taken without notice may rightly ignore it and may assume that no 
 court will enforce it against him).  However, the rules do not indicate that 
 failure to serve one party renders the motion untimely or completely ineffective 
 against the other parties served.  
We see no prejudice where, as in the present case, 
 the party not served with a post-trial motion was disinterested in the action.  
 The DOT did not contest Respondents petition and did not appear at the hearing 
 to voice opposition to Appellants position.  Because the DOT was not interested 
 in asserting any rights in the matter, its substantial rights were not prejudiced 
 by the lack of its presence at the post-trial hearing. [1]   Brown v. Mickens, 256 S.C. 346, 348, 
 182 S.E.2d 417, 417-18 (1971) (Generally, a party interested in resisting 
 the relief sought by a motion has a right to notice sufficient to give him an 
 opportunity to be heard.) (emphasis added); see Nishitani v. Baker, 
 921 P.2d 1182, 1192-93 (Haw. Ct. App. 1996) (noting that although plaintiffs 
 violated Hawaii Rule of Civil Procedure Rule 5(a) by failing to serve the defendants 
 with notice of substitution, the court concluded that such failure did not 
 affect Defendants substantial rights and was, thus, harmless error).  
Although Appellants violated Rule 5 by failing to serve 
 the DOT with notice of the post-trial motion, there is no evidence that the 
 DOTs substantial rights were prejudiced.  Thus, the motion was timely filed 
 and served upon the interested parties in the action.  Accordingly, the trial 
 court erred in finding the failure to serve the DOT rendered the post-trial 
 motion ineffective.  
We now turn to the question of whether Appellants appeal was timely.  Because 
 we have already determined that Appellants post-trial motion was timely, the 
 motion tolled the time period for filing their notice of appeal until after 
 receipt of the order denying the motion.  Rule 203(b)(1), SCACR.  Appellants 
 served their notice of appeal within thirty days of receipt of the order denying 
 the motion.  Accordingly, their notice of appeal was timely and this court has 
 jurisdiction to hear the appeal. 
II.      Closing of the Highway
Appellants argue the trial court misconstrued the facts and erred in closing 
 the highway.  We find the trial court did not abuse its discretion because there 
 is sufficient evidence in the record to support the courts decision.
Section 57-9-10 provides: Any interested person, the State or any of its political 
 subdivisions or agencies may petition a court of competent jurisdiction to abandon 
 or close any street, road or highway whether opened or not.  S.C. Code Ann. 
 § 57-9-10 (1991).  The determination is controlled by a best interest standard: 
 If the court shall determine that it is to be the best interest of all concerned 
 that such street, road or highway be abandoned or closed, the court shall then 
 determine in whom the title thereto shall be vested and issue an appropriate 
 order.  S.C. Code Ann. § 57-9-20 (1991).
 The South Carolina Supreme Court addressed the appropriate interest to be 
 considered in closing a road: 

 A public street may not be vacated for the sole purpose of benefiting an 
 abutting owner.  However, the mere fact that the vacation was at the instigation 
 of an individual who owns abutting property does not invalidate the vacation 
 or constitute abuse of discretion, nor does the fact that some private interest 
 may be served incidentally.  On the other hand, it must appear clearly that 
 no consideration other than that of public interest could have prompted the 
 action.   

First Baptist Church of Mauldin, 308 S.C. 
 at 229, 417 S.E.2d at 594 (citations omitted).
The reasons proposed by Respondents for closing the portion of the highway 
 included: safety of residents of the development and other landowners; a need 
 to decrease vandalism in the area; and a need to reduce other crimes occurring 
 along the highway.  Respondents also noted that McKinney Chapel would be protected 
 from vandalism by closing the highway.  
Several landowners and other individuals testified 
 regarding the vandalism of property along the highway.  Deputy Dewey Smith of 
 the Pickens County Sheriffs Department testified that the Sheriffs Department 
 would not be able to provide adequate security for the residents of the development 
 because of its location and distance from the Sheriffs Office. While many landowners 
 abutting the highway testified that their property values would increase after 
 the closing, they also explained one of the main reasons for closing the highway 
 would be to provide better security to landowners and the chapel.   
Jim Anthony, president of the Developer, testified 
 that reports of vandalism and other serious crimes had decreased as a result 
 of hiring security personnel, but he and landowners in the development sought 
 to close the highway to increase security.  Anthony admitted that closing the 
 highway and increasing security would increase the value of the property within 
 the development and along the closed portion of the highway.  Anthony also detailed 
 his experience in operating another gated road, which provided access to an 
 active church under an agreement with the church for ten years without a problem. 

Both Anthony and Joe Durham, Chairman of the Board 
 of Trustees of Grace UMC, testified regarding the agreement to allow access 
 to McKinney Chapel and cemetery.  Both believed the gate would increase security 
 for the chapel and help preserve it as a historical or tourist location. 
Several individuals with ties to the chapel or 
 cemetery expressed concerns that a gate would restrict access or intimidate 
 people wishing to visit McKinney Chapel or cemetery.  Thomas Watson testified 
 that he was followed to the chapel by a man in an unmarked car who observed 
 him for an extended period of time.  He feared that if the gate is erected and 
 visitors to the chapel are monitored, it would be very intimidating.  Finally, 
 Dot Robertson testified regarding the history of McKinney Chapel, expressed 
 concerns regarding the publics access to the historical site, and presented 
 a statement from the Sierra Club expressing their concern over the possible 
 loss of public access to the church.  
Patrick Bryant presented the court with a petition 
 signed by 4,000 people in both Pickens and Oconee counties opposing the closing 
 of the highway.  It is not clear whether the individuals signing the petition 
 knew of the agreement between Developer and Grace UMC to provide access to McKinney 
 Chapel.  However, Bryant testified he still believed persons wanting to visit 
 the chapel through the gate would be prevented from doing so, notwithstanding 
 the agreement.  
It is clear that the trial court was concerned 
 about restricting access to the chapel.  However, we find, based upon the evidence 
 presented at trial, the court appropriately considered the benefits and detriments 
 to everyone involved.  The agreement between Developer and Grace UMC provides 
 substantial access to anyone wishing to visit the chapel or cemetery.  Although 
 the court expressed some concern regarding how the agreement would be enforced, 
 the agreement was ultimately incorporated in the court order so that any violation 
 of the agreement could be considered contempt of the court order and appropriate 
 sanctions would apply.   
Nevertheless, Appellants argue that the trial court 
 erred in finding the agreement did not violate the Pickens County resolution 
 because bringing a contempt action would be burdensome.  The evidence supports 
 the trial courts finding that the agreement allows unfettered access, complies 
 with the resolution, and provides an appropriate remedy in the nature of a contempt 
 action.  
The evidence also supports a finding that security 
 in the development and at the chapel would be increased by closing the highway 
 and installing the security gate.  There was uncontested testimony that the 
 Developer had successfully operated a security gate in another development that 
 still allowed unfettered access for members of an existing church inside the 
 gate.  The trial court properly considered the interests of all persons concerned, 
 and more importantly the public at large, in rendering its decision.  
Finally, Appellants argue the trial court erred in discounting the petition 
 signed by 4,000 residents opposing the highway closing.  The trial court specifically 
 held that it believed the persons signing the petition were unaware they would 
 be given permanent access to the chapel.  It does appear that the petition was 
 circulated prior to execution of the agreement providing access between the 
 Developer and Grace UMC.  Thus, the trial court did not err in this finding.      

The trial court rendered its decision to close 
 the Highway after carefully considering the interests of the public.  Accordingly, 
 we find no abuse of discretion in the courts decision to close the portion 
 of the highway at issue.
III.    Title to the Closed Highway
Appellants maintain the trial court erred in vesting title in Respondents once 
 it determined the highway should be closed.  We disagree.
First, Appellants lack standing to assert the trial 
 court improperly transferred title to Respondents.  Appellants contend the rightful 
 owner is the DOT.  However, Appellants have not asserted any right to the property 
 or claim title should have been vested in them.  A party cannot appeal from 
 a decision which does not affect his or her interest, however erroneous and 
 prejudicial it may be to some other persons rights and interests.  Beaufort 
 Realty Co. v. Beaufort County, 346 S.C. 298, 301, 551 S.E.2d 588, 589-90 
 (Ct. App. 2001).  DOT, and not Appellants, would be the appropriate party to 
 appeal this determination.
Even if Appellants had standing to raise the issue, 
 the trial court properly transferred title to Respondents.  The road closing 
 statute provides that once a court determines that closing a road is in the 
 public interest, it may determine in whom title should be vested.  S.C. Code 
 Ann. § 57-9-20 (1991).  The power to declare ownership of the closed road does 
 not grant the court the power to create or destroy a fee simple interest in 
 the property.  The court may only declare who owns legal title.  Hoogenboom 
 v. City of Beaufort, 315 S.C. 306, 318-19, 433 S.E.2d 875, 884 (Ct. App. 
 1992).  Further, in the absence of some statutory disposition, abandonment 
 or vacation of a public street vests absolute possession and title in the abutting 
 property owners. . . .  City of Greenville v. Bozeman, 254 S.C. 306, 
 317-18, 175 S.E.2d 211, 216 (1970).   
In its answer, Pickens County stated that it had never owned or maintained 
 any portion of the highway.  DOT noted in its answer that the land which later 
 became the highway came within the state highway system in approximately 1940.  
 Appellants presented DOT documents at trial dating back to 1939.  The documents 
 all indicated that DOT had a right-of-way over the highway, not fee simple title.   

In its order, the trial court referred to DOT as the 
 owner of the highway.  Nevertheless, after determining that closing the highway 
 would benefit the public, the court vested title in the highway to Respondents.  
 In their post-trial motion, Appellants alleged the trial court erred in vesting 
 ownership in Respondents after finding the DOT was title owner of the highway.  
 In the order denying the post-trial motion, the trial court clarified its prior 
 order stating that the evidence supported a finding that the DOT owned only 
 a right-of-way over the property, and thus, the title to the property was correctly 
 vested in the abutting landowners. 
The evidence supports the trial courts determination.  Although the initial 
 order closing the highway mistakenly refers to DOT as the owner, all the evidence 
 supports the trial courts subsequent order that the DOT owned only a right-of-way.  
 Therefore, title to the property upon closing the highway was correctly vested 
 in Respondents as abutting landowners.  Accordingly, we find the trial court 
 did not abuse its discretion in transferring title in the closed portion of 
 the highway to Respondents.
CONCLUSION
We find the trial court did not abuse its discretion in closing a portion of 
 the highway.  The evidence in the record supports the finding that, while it 
 did benefit adjoining landowners, it would also be in the best interest of the 
 public.  Additionally, we hold the court properly transferred title in the closed 
 portion of the highway to Respondents.  Accordingly, the decision of the trial 
 court is
AFFIRMED.
HEARN, C.J., STILWELL, J., and CURETON, A.J., concur.

 
 
 [1] Interestingly, the DOT has not filed a brief in this appeal to complain 
 about its lack of notice of the post-trial hearing.